STATE of Wisconsin, Plaintiff-Respondent,

v.

Warrick D. FLOYD, Defendant-Appellant.

Supreme Court

*No. 98–2062–CR. Oral argument December 3, 1999.—Decided February 22, 2000.*

2000 WI 14

(Also reported in 606 N.W.2d 155.)

For the defendant-appellant there were briefs and oral argument by *David D. Leeper*, Madison.

For the plaintiff-respondent the cause was argued by *Lara M. Herman*, assistant attorney general, with whom on the brief was *James E. Doyle*, attorney general.

¶ 1. ANN WALSH BRADLEY, J. This case is before the court on certification from the court of appeals pursuant to Wis. Stat. (Rule) § 809.61

(1997–98).[1] The defendant, Warrick D. Floyd, asserts that he is entitled to sentence credit for the time he spent in confinement on an armed robbery charge that was dismissed and read in for purposes of sentencing. Because we determine that Wis. Stat. § 973.155(1) requires sentence credit for confinement on charges that are dismissed and read in at sentencing, we reverse and remand for a recalculation of Floyd's sentence credit.

¶ 2. The facts are undisputed. On February 5, 1997, Floyd was charged with recklessly endangering safety while armed with a dangerous weapon, carrying a concealed weapon, fourth-degree sexual assault, disorderly conduct, and criminal trespass. He was released on a $3,500 personal recognizance bond. Subsequently, the State filed a four-count information including all of the charges with the exception of the sexual assault charge. Floyd's recognizance bond was not modified until it was revoked upon his guilty plea to the reckless endangerment charge on September 19, 1997.

¶ 3. While free on bond, Floyd was arrested on April 15, 1997 for armed robbery. The court set a $15,000 cash bond for his release on the armed robbery charge. Unable to post bond, Floyd remained in custody from April 15, 1997 until November 18, 1997, the date of the sentencing hearing.

¶ 4. As part of a plea agreement, the State agreed to dismiss the armed robbery charge and file a lesser

---

[1] All future references to the Wisconsin Statutes are to the 1997–98 volumes unless otherwise indicated.

The defendant appeals an order of the Circuit Court for Rock County, Edwin C. Dahlberg, Judge, denying his post-conviction motions.

charge of felony bail jumping.[2] On September 19, 1997, Floyd pled guilty to both the original reckless endangerment charge and the felony bail jumping charge with the understanding that all remaining charges, including the armed robbery charge, would be dismissed and read in at sentencing. The circuit court then ordered a pre-sentence report.

¶ 5. The description of the armed robbery charge contained in the report was both lengthy and detailed. An equal amount of discussion was devoted to the read-in armed robbery charge as to the reckless endangerment charge. The victim impact statement in the report also related the serious consequences of Floyd's armed robbery charge, describing the victim's various psychological and financial problems.

¶ 6. On November 18, 1997, all of the dismissed charges, including the armed robbery charge, were read in at the sentencing hearing. On the reckless endangerment charge, Floyd received the maximum sentence of five years.[3] The circuit court withheld sentencing on the bail jumping charge and placed Floyd on five years probation, consecutive to the sentence of five years imprisonment.

---

[2] The bail jumping charge stemmed from Floyd's testimony that he had used illegal drugs in violation of his personal recognizance bond in the reckless endangerment case.

[3] The maximum term of imprisonment for second degree reckless endangerment is two years. Wis. Stat. § 941.30(2); Wis. Stat. § 939.50(3)(e). Floyd also received a penalty enhancement for having committed the offense with a dangerous weapon. For a felony with a maximum term of imprisonment of two years or less, the penalty enhancement may not exceed three years. Wis. Stat. § 939.63(4). Thus, Floyd received the maximum sentence permitted.

¶ 7.    Upon an inquiry by the court as to the appropriate sentence credit on the reckless endangerment charge, Floyd's attorney requested 217 days of credit for the time Floyd spent in custody from the date of his arrest on armed robbery to the date of sentencing. Challenging that calculation, the State suggested Floyd was entitled to only 61 days of credit for the period between his plea to reckless endangerment on September 19 and the sentencing on November 18. In response, Floyd's attorney altered his position and agreed with the State's computation of sentence credit. The court then ordered that 61 days of credit be applied towards the sentence for reckless endangerment.

¶ 8.    Subsequently, Floyd filed a post-conviction motion seeking to remedy the inadequate award of sentence credit.[4] He alleged that under Wis. Stat. § 973.155(1) he was entitled to an additional 157 days of credit for the period he remained in custody from April 15, 1997, the date of his arrest on the charge of armed robbery, to September 19, 1997, the date of his guilty plea. Since the armed robbery charge was read in and considered by the court at sentencing, Floyd claimed that he was entitled to the days spent in custody on that charge.

¶ 9.    The State moved to dismiss the post-conviction motion on the basis that Floyd's custody on the armed robbery charge was not connected to the conduct for which the sentence was imposed in the reckless endangerment case. The circuit court granted the State's motion and denied Floyd additional sentence

---

[4] Floyd also filed an amended post-conviction motion that added a claim of ineffective assistance of counsel. Since we resolve this case on a statutory basis for sentence credit, we need not address Floyd's post-conviction arguments as to ineffective assistance of counsel.

credit, observing that he was not entitled to credit "for any time he spent on the armed robbery charge unless and until he is convicted of that charge."

¶ 10. Floyd filed a notice of appeal, renewing his post-conviction arguments and supplementing his statutory sentence credit argument with a constitutional claim that the denial of sentence credit based on his indigency constituted a violation of equal protection. The court of appeals subsequently presented for certification the following question on the issue of sentence credit:

> [W]hether a dismissed charge that is read in for the purpose of sentencing on another conviction is "in connection with the course of conduct for which sentence was imposed," or constitutes "an offense for which the offender is ultimately sentenced" within the meaning of Wis. Stat. § 973.155(1).[5]

■

¶ 11. Our inquiry, as set forth in the certified question, begins with an examination of Wis. Stat. § 973.155(1), the statutory basis of Floyd's claim. Statutory interpretation presents a question of law that we decide independently of the determinations rendered by the circuit court or court of appeals. *Antwaun A. v. Heritage Mut. Ins. Co.*, 228 Wis. 2d 44, 54, 596 N.W.2d 456 (1999).

---

[5] The court of appeals also certified the question of whether it is a violation of the Equal Protection Clause to deny sentence credit due to indigency pending the dismissal of a charge that was read in for sentencing purposes. Because our examination of Wis. Stat. § 973.155 resolves the present case, we do not address the second certified question. *State v. Castillo*, 213 Wis. 2d 488, 492, 570 N.W.2d 44 (1997).

¶ 12. The goal of statutory interpretation is to discern the intent of the legislature in enacting the statutory provision. Our first step in the interpretation of a statute focuses on its plain language. *State v. Gilbert*, 115 Wis. 2d 371, 377, 340 N.W.2d 511 (1983). If the plain language proves ambiguous, we look beyond the language to examine the scope, history, context, and purpose of the statute. *State v. Cardenas-Hernandez*, 219 Wis. 2d 516, 538, 579 N.W.2d 678 (1998). A statute is ambiguous if reasonable, well-informed persons may differ as to its meaning. *State ex rel. Jacobus v. State*, 208 Wis. 2d 39, 48, 559 N.W.2d 900 (1997).

¶ 13. Wisconsin Stat. § 973.155 governs sentence credit and states in pertinent part:

> (1)(a) A convicted offender shall be given credit toward the service of his or her sentence for all days spent in custody in connection with the course of conduct for which sentence was imposed. As used in this subsection, "actual days spent in custody" includes, without limitation by enumeration, confinement related to an offense for which the offender is ultimately sentenced, or for any other sentence arising out of the same course of conduct, which occurs:
>
> 1. While the offender is awaiting trial;
>
> 2. While the offender is being tried; and
>
> 3. While the offender is awaiting imposition of sentence after trial.

Since neither Floyd nor the State dispute that Floyd's confinement constitutes "custody" under the statute, the two critical phrases for the purposes of our analysis are: "in connection with the course of conduct for which

sentence was imposed" and "related to an offense for which the offender is ultimately sentenced."[6]

¶ 14.   Floyd sets forth two principal arguments in support of his claim that he is entitled to credit under Wis. Stat. § 973.155(1). First, he maintains that under the plain meaning of the first phrase, "in connection with the course of conduct for which sentence was imposed," he should receive sentence credit for the period spent in custody on the armed robbery charge. He asserts that it was connected to the reckless endangerment charge by virtue of being dismissed and read in at sentencing in exchange for a plea to reckless endangerment. Since the dismissal and subsequent read-in of the armed robbery charge are procedurally "connected" to the "course of conduct" for which the sentence was imposed, Floyd contends that such a link represents yet another type of significant connection that meets the requirement for sentence credit.

¶ 15.   However, the proposition that a procedural connection may satisfy the statutory requirement has already been rejected by a court addressing a similar scenario. In *State v. Beiersdorf*, 208 Wis. 2d 492, 561 N.W.2d 749 (Ct. App. 1997), the defendant was charged with bail jumping for violating the conditions of his

---

[6] During oral argument, both parties suggested that the second sentence of Wis. § 973.155(1), which defines days spent in custody as "confinement related to an offense for which the offender is ultimately sentenced," is not pertinent in our analysis of whether Floyd is entitled to sentence credit. However, the court of appeals takes a different view of the phrase and observes that the ambiguity as to read-in charges stems from this critical language. We agree. Floyd has also asserted the relevance of this language throughout his briefs submitted before this court and has rested one of his principal statutory arguments on the phrase.

personal recognizance bond on a sexual assault charge. Unable to post cash bail in his bail jumping case, the defendant remained in custody for 44 days.

¶ 16.  The defendant subsequently pled guilty to both sexual assault and bail jumping and received a sentence of ten years imprisonment for sexual assault. His sentence of five years imprisonment for bail jumping was stayed in favor of probation. He then sought sentence credit towards the sexual assault sentence for the 44 days spent in custody in his bail jumping case. The defendant asserted that these 44 days were "in connection with the course of conduct for which sentence was imposed," because they resulted from his violation of the conditions of the bond on the sexual assault charge.

¶ 17.  The court dismissed the defendant's interpretation of Wis. Stat. § 973.155(1), reasoning that although a defendant's custody may have some partial connection to another crime, "that does not mean that the custody, for credit purposes, is related to 'the course of conduct for which sentence was imposed.'" *Id.* at 498. *Beiersdorf* underscores that a factual connection fulfills the statutory requirement for sentence credit, and that a procedural or other tangential connection will not suffice.

¶ 18.  Floyd's next argument addresses the second statutory phrase set forth in the certified question: "[related to] an offense for which the offender is ultimately sentenced." He contends that because the trial court took the read-in armed robbery charge into account when sentencing him for reckless endangerment, his confinement on the armed robbery charge was related to an offense for which he was ultimately sentenced. This statutory phrase of Wis. Stat.

§ 973.155(1)(a) appears to be ambiguous and is subject to differing reasonable interpretations.

¶ 19. A narrow construction of the statute would allow credit only on the charge for which the offender is convicted. A broader construction would include credit for a read-in offense upon which the sentence ultimately might be based. The former construction focuses on the basis of the conviction, and the latter focuses on the basis of the sentencing.

¶ 20. Since Wis. Stat. § 973.155(1) is ambiguous in this respect, we look beyond the language to examine the statute's history and purpose in order to discern the legislative intent. *Cardenas-Hernandez*, 219 Wis. 2d at 538. Wisconsin's sentence credit statute has its roots in the constitutional principle of equal protection and was an immediate response to this court's call for action in *Klimas v. State*, 75 Wis. 2d 244, 249 N.W.2d 285 (1977).

¶ 21. The *Klimas* court, addressing equal protection concerns, urged the legislature to provide sentence credit for custody based on an indigent defendant's inability to post bail. *Id.* at 250. Although the holding in *Klimas* was limited to requiring sentence credit in the case of the defendants treated disparately due to their financial status, the court also encouraged the adoption of a broader rule based on the existing federal law. *Id.* at 251.

¶ 22. The legislature responded by enacting Wis. Stat. § 973.155, which expanded sentence credit beyond the scope of *Klimas*. The statute was fashioned in large part on both the federal sentence credit statute, 18 U.S.C. § 3568, and the Model Penal Code. *State v. Boettcher*, 144 Wis. 2d 86, 91–92, 423 N.W.2d 533 (1988). Underlying the adoption of Wis. Stat. § 973.155 was the intent to bring the law of Wisconsin into conformity with the broad federal statute, which provided

for sentence credit for any pre-sentence confinement period, whether arising from a financial inability to post bail, unwillingness to grant release on bail, or for the purpose of examination. *Id*. *See also* Legislative Council Notes to 1977 Senate Bill 159, sec. 9.

¶ 23.  In *State v. Beets*, 124 Wis. 2d 372, 379, 369 N.W.2d 382 (1985), this court noted the broad statutory base of the sentence credit statute which exceeded the restricted scope of the common law. The court further recognized the remedial purpose underlying the conscious effort to provide sentence credit in a wide range of situations, observing that the statute was "designed to afford fairness" and ensure "that a person not serve more time than he is sentenced." *Id*.

¶ 24.  With the history and purpose of Wis. Stat. § 973.155 in mind, we next examine the nature of read-in charges to determine whether the inclusion of these charges comports with the legislative scheme of the statute. Wisconsin's read-in procedure was set forth in *Austin v. State*:

> Under our read-in procedure, the defendant does not plead to any charges and therefore is not sentenced on any of the read-in charges but such admitted uncharged offenses are considered in sentencing him on the charged offense.

49 Wis. 2d 727, 732, 183 N.W.2d 56 (1971). Although *Austin* addressed the validity of negotiated agreements not to prosecute in exchange for a read-in of defendant's uncharged offenses, its description of read-in charges is nevertheless significant to our analysis.

██

¶ 25.  Read-ins constitute admissions by the defendant to those charges. *Id.*; *State v. Cleaves*, 181 Wis. 2d 73, 78–79, 510 N.W.2d 143 (Ct. App. 1993). The

sentencing court considers read-ins as part of a defendant's conduct in determining the appropriate sentence, and the state is prohibited from future prosecution of these charges. *Embry v. State*, 46 Wis. 2d 151, 157, 174 N.W.2d 521 (1970); *State v. Szarkowitz*, 157 Wis. 2d 740, 753, 460 N.W.2d 819 (Ct. App. 1990).

¶ 26. An offender does not run the risk of consecutive or concurrent sentences based on read-in charges and, in that respect, is not formally sentenced on these charges. *Austin*, 49 Wis. 2d at 727. However, there is exposure to the risk of a lengthier sentence as a result of consideration by the court of read-in charges. *Id.*

¶ 27. By their very nature, read-ins stand apart from other charges that may be considered by a sentencing court. The implication is that more weight is placed on the admitted charges than on unproven or acquitted offenses. *Szarkowitz*, 157 Wis. 2d at 753–54. *See also* Annotation, *Court's Right, in Imposing Sentence, to Hear Evidence of, or to Consider, Other Offenses Committed by Defendant*, 96 A.L.R. 2d 768, 787 sec. 7(a) (1964).

¶ 28. In examining whether Wis. Stat. § 973.155(1) provides sentence credit for confinement on read-in charges, we are guided by the discussion in *State v. Szarkowitz*, 157 Wis. 2d 740, 460 N.W.2d 819 (Ct. App. 1990). The *Szarkowitz* court was asked to interpret an ambiguity in the restitution statute and determine whether the language providing that a defendant pay restitution "to any victim of the crime" included victims of read-in offenses. *Id.* at 751.

¶ 29. Recognizing the remedial purpose of the restitution statute, as well as the distinct character of read-in charges, the court adopted an expansive reading of the language to include read-in offenses rather than restricting the statute's application exclusively to

convictions. *Id.* at 755–56. The court did not, however, extend the scope of the statute to other offenses unrelated to the crimes of conviction or read-in crimes. *Id.* at 756. The legislature subsequently amended the restitution statute consistent with the *Szarkowitz* rationale. *See* Wis. Stat. § 973.20.

¶ 30. The State argues that an expansive interpretation of the sentence credit statute will release the floodgates and result in sentence credit for a myriad of dismissed and other charges that also may be considered or mentioned at sentencing. Because we limit the reach of Wis. Stat. § 973.155(1) to charges that are dismissed and read in at sentencing, we neither share the State's ominous prediction nor envision a deluge of unwarranted claims for sentence credit.

¶ 31. In limiting the statute's scope, we recognize the important distinction between read-ins and other charges, including pending charges, acquittals or dismissals. The unique nature of read-in charges and this state's read-in procedure, viewed in the context of the legislative history and purpose of the sentence credit statute, lead us to conclude the legislature intended that Wis. Stat. § 973.155(1) provide sentence credit for these charges. Applying the rule of lenity, we also construe this ambiguous statute strictly in favor of Floyd. *State v. Bohacheff*, 114 Wis. 2d 402, 417, 338 N.W.2d 466 (1983); *State v. Frey*, 178 Wis. 2d 729, 745, 505 N.W.2d 786 (Ct. App. 1993).

¶ 32. In summary, we determine that pre-trial confinement on a dismissed charge that is read in at sentencing relates to "an offense for which the offender is ultimately sentenced." Pursuant to Wis. Stat. § 973.155(1), Floyd is entitled to sentence credit for the time spent in confinement from the date of his arrest on

779

armed robbery to the date of sentencing. Accordingly, we reverse and remand to the circuit court with directions to recalculate Floyd's sentence credit.

*By the Court.*—The order of the circuit court is reversed and the cause is remanded.