STATE of Wisconsin, Plaintiff-Respondent,

v.

David Aaron PIGGUE, Jr., Defendant-Appellant.†

Court of Appeals

*No. 2015AP152–CR. Submitted on briefs October 6, 2015.—Decided December 8, 2015.*

2016 WI App 13

(Also reported in 875 N.W.2d 663.)

† Petition for review filed.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Hannah Schieber Jurss*, assistant public defender, Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Brad D. Schimel*, attorney general, and *Jacob C. Wittwer*, assistant attorney general.

Before Kessler and Brennan, JJ., and Daniel L. LaRocque, Reserve Judge.

¶ 1. LaROCQUE, J.  David Aaron Piggue, Jr., who was convicted of witness intimidation, appeals the judgment of conviction and the postconviction order denying him sentence credit for time spent in custody

awaiting trial for a sexual assault charge.[1] Piggue was awaiting his sexual assault trial when he intimidated the assault victim, attempting to persuade her not to testify against him. On appeal he argues that because the trial court discussed the sexual assault, for which he was ultimately acquitted, when sentencing him for the intimidation charge, he should be awarded credit for the time he spent in custody related to the sexual assault charge. We disagree and affirm the trial court.

### BACKGROUND

¶ 2.   Piggue was charged with felony intimidation in April 2013. According to the criminal complaint, Piggue, who was on trial a month earlier for sexual assault, instructed his girlfriend via a series of phone calls and letters to contact the victim in order to convince her not to testify. The complaint alleged that Piggue admitted writing letters, providing his girl-friend with the victim's phone number, and telling his girlfriend to offer the victim money so that she would not come to court.

¶ 3.   Piggue pled guilty to the charge, and the matter proceeded to sentencing.

¶ 4.   At the sentencing hearing, the State re-quested nine years of initial confinement followed by five years of extended supervision. The district attor-ney focused on the severity of the crime, including not only the fact that Piggue attempted to dissuade a victim from testifying at trial, but also that the lan-guage he used showed a complete lack of respect for

---

[1] The Honorable David L. Borowski sentenced Piggue and entered the judgment of conviction. The Honorable Daniel L. Konkol entered the order denying the relevant portion of Piggue's postconviction motion.

women. The district attorney also emphasized details from the sexual assault charge of which Piggue was acquitted. In that case, the victim claimed that Piggue got off the bus with her, followed her down the street, and forced her—at gun point—to have sex with him in a nearby alley. The district attorney pointed out that while Piggue initially told police "it was not him on the bus, . . . he doesn't ride the bus, . . . he doesn't go out at night, . . . doesn't have sex in the alley," Piggue's sperm fractions had been found on the victim, and his trial defense was that he and the victim—who he claimed was a prostitute—had consensual sex. The district attorney also called the victim to testify. The victim described in great detail the impact that both the sexual assault and the intimidation had on her— particularly the fact that Piggue had her phone number, which made her feel especially unprotected and vulnerable to future attacks.

¶ 5.  Defense counsel requested a much shorter sentence, and noted that Piggue had already spent approximately eighty days in custody awaiting the sexual assault trial. The defense focused on the fact that Piggue accepted responsibility for intimidating the sexual assault victim, and that his actions were driven by a desire not to be separated from his son.

¶ 6.  The trial court sentenced Piggue to six years of initial confinement and five years of extended supervision; it did not award any credit for the time Piggue spent in custody for the sexual assault charge. In explaining its sentence, the trial court discussed the sexual assault trial, noting that the DNA evidence proved that sexual contact or intercourse occurred and that it found Piggue's defense that the victim was a prostitute "preposterous." The court also explained, however, that the *primary* factor driving the sentence

608

was the gravity of the "actual offense"—i.e., the intimidation. The trial court stated that witness intimidation during trial was a "very significant offense" on which it placed "a ton of weight." It also stated that the offense was aggravated by the fact that the witness was the victim, "not an ancillary witness," and that Piggue involved his girlfriend in the intimidation.

¶ 7. After he was sentenced, Piggue filed a post-conviction motion, requesting, as relevant here, eighty-four days of sentence credit for the time he spent in custody for the sexual assault charge. Piggue reasoned that he was "equitably entitled" to the credit because the court considered the sexual assault charge in fashioning its sentence. The trial court denied Piggue's motion, and Piggue now appeals.

## ANALYSIS

■

¶ 8. The sole issue on appeal is whether Piggue is entitled to receive credit for the eighty-four days he spent in custody for his sexual assault charge. "Our inquiry . . . begins with an examination of WIS. STAT. § 973.155(1) [2013–14[2]], the statutory basis of [Piggue's] claim." *See State v. Floyd*, 2000 WI 14, ¶ 11, 232 Wis. 2d 767, 606 N.W.2d 155. Thus, our standard of review is *de novo. See id.; see also State v. Brown*, 2010 WI App 43, ¶ 4, 324 Wis. 2d 236, 781 N.W.2d 244.

¶ 9. WISCONSIN STAT. § 973.155(1)(a) provides:

A convicted offender shall be given credit toward the service of his or her sentence for all days spent in custody in connection with the course of conduct for

[2] All references to the Wisconsin Statutes are to the 2013–14 version unless otherwise noted.

609

which sentence was imposed. As used in this subsection, "actual days spent in custody" includes, without limitation by enumeration, confinement related to an offense for which the offender is ultimately sentenced, or for any other sentence arising out of the same course of conduct, which occurs:

    1. While the offender is awaiting trial;

    2. While the offender is being tried; and

    3. While the offender is awaiting imposition of sentence after trial.

██

¶ 10.    Piggue argues that because the trial court considered the sexual assault charge in fashioning his sentence for the witness intimidation conviction, the court in effect "ultimately sentenced" him for the sexual assault, and therefore he should be awarded credit for the time he spent in custody awaiting his sexual assault trial.

¶ 11.    In support, Piggue cites *Floyd*, in which the supreme court held that WIS. STAT. § 973.155(1) requires sentence credit for confinement on charges that are dismissed but read in at sentencing. *See Floyd*, 232 Wis. 2d 767, ¶ 1. In that case, Floyd pled guilty to reckless endangerment and felony bail jumping. *Id.*, ¶¶ 2–4. Pursuant to the plea agreement, an armed robbery charge was dismissed but read in at sentencing. *Id.*, ¶ 4. Floyd sought sentence credit for time spent in custody related to the read-in robbery charge. He argued, as relevant here, that the charge was related to an offense for which he was sentenced because the court took into account the read-in robbery offense in fashioning its sentence. *Id.*, ¶¶ 14, 18. The supreme court agreed with Floyd, determining that the phrase "related to an offense for which he was . . .

sentenced" was ambiguous, *see id.*, ¶ 18, and explained why offenders should be given credit for time served related to read-ins. It explained that while courts "may" consider unproven or acquitted offenses during sentencing, read-ins *are* considered, "and the state is prohibited from future prosecution of" the read-in charge. *See id.*, ¶¶ 25–27. It also explained that read-ins are unique because they "constitute admissions by the defendant to those charges." *Id.*, ¶ 25. Importantly, *Floyd* also limited "the reach of Wis. Stat. § 973.155(1) to charges that are dismissed and read in at sentencing." *Floyd*, 232 Wis. 2d. 767, ¶ 30.

¶ 12.   Piggue acknowledges that *Floyd* expressly limited the sentence-credit statute's reach to read-in offenses, but argues that we should nonetheless expand *Floyd* to include the acquittal in his case. First, Piggue points out that the *Floyd* court based its reasoning in part on the premise that a read-in constitutes an admission, but that has since been withdrawn in *State v. Straszkowski*, 2008 WI 65, ¶¶ 58, 91–95, 310 Wis. 2d 259, 750 N.W.2d 835. Second, Piggue claims that the circumstances of his case are unique, in that, among other things, he was in custody for the sexual assault charge when he intimidated the victim and that the sexual assault "was a central component" of the intimidation sentence.

■

¶ 13.   We are not persuaded. Even though *Straszkowski* may have clarified that read-ins are not to be construed as admissions, the fact is that read-ins are still distinguishable from acquittals and non-read-in dismissals. *See Floyd*, 232 Wis. 2d 767, ¶¶ 26–27 (acquittals *may* be considered at sentencing; read-ins *are* considered at sentencing and thus carry more weight). *Floyd* therefore remains good law. *See also*

611

*Cook v. Cook*, 208 Wis. 2d 166, 189, 560 N.W.2d 246 (1997) ("The supreme court is the only state court with the power to overrule, modify or withdraw language from a previous supreme court case."). Moreover, we do not think that Piggue's circumstances are in any way unique. Offenders attempt to dissuade witnesses from testifying while awaiting trial with some regularity, and it is well-known that "[a] sentencing court may consider uncharged and unproven offenses and facts related to offenses for which the defendant has been acquitted." *See, e.g., State v. Leitner*, 2002 WI 77, ¶ 45, 253 Wis. 2d 449, 646 N.W.2d 341 (footnote omitted). We therefore decline to expand WIS. STAT. § 973.155(1) beyond the limits set by *Floyd*. Furthermore, while not necessary to our analysis, we add that Piggue goes a bit too far in arguing that "the sexual assault charge was a central component of" his sentence, where, as demonstrated above, it is clear that the trial court's primary focus at sentencing was the witness intimidation charge.

¶ 14.   For the foregoing reasons, the trial court's order denying Piggue additional sentencing credit is affirmed.

*By the Court.*—Judgment and order affirmed.