BRENNAN, J.
¶ 1 Demario D. Fleming appeals a judgment of conviction and the order denying in part and granting in part[1] his postconviction motion for sentence modification. Fleming seeks modification of two separate parts of his sentence: pretrial detention credit and a condition of his extended supervision. First, regarding credit, he seeks pretrial incarceration credit against his intimidation of a witness sentence for time he spent in custody on four counts of armed robbery. The armed robbery counts were dismissed outright, without prejudice, and not as read-ins, at the time of his sentencing on the intimidation charges. He argues that he is entitled to the credit under WIS. STAT. § 973.155(1) (2015-16),[2] State v. Floyd , 2000 WI 14, ¶ 27, 232 Wis. 2d 767, 606 N.W.2d 155, and State v. Straszkowski , 2008 WI 65, ¶ 5, 310 Wis. 2d 259, 750 N.W.2d 835. Second, he seeks a removal of the condition of no contact with M.H., the mother of his child.
¶ 2 The State opposes Fleming's credit request on the grounds that WIS. STAT. § 973.155(1) and well-established case law in Wisconsin prohibits the credit. As to the no-contact condition, the State argues that it is a proper condition of supervision under State v. Stewart , 2006 WI App 67, ¶ 11, 291 Wis. 2d 480, 713 N.W.2d 165, and the trial court properly exercised its discretion in imposing it. Thus, the State argues the postconviction court's order should be affirmed.
¶ 3 We agree with the State and affirm for the reasons following.
BACKGROUND
The Armed Robbery Counts
¶ 4 Fleming and two others were initially charged with four counts of armed robbery in Milwaukee County Circuit Court Case No. 2016CF566 for their roles in the robbery of four people at gunpoint on January 31, 2016. One of the alleged victims was P.S. The victims had some history with Fleming and the other defendants in the armed robbery. The robbery victims reported that the items taken included a $20,000.00 Rolex watch.
The Intimidation of a Witness Complaint
¶ 5 While Fleming was in custody on the armed robbery charges, he made a series of phone calls from the jail to his mother and to M.H.[3] and told them to call P.S. and tell him not to come to court to testify against Fleming. These calls were recorded by the jail and listened to by police, leading to two counts of intimidation of a witness against Fleming in Milwaukee County Circuit Court Case No. 2016CF4146. The criminal complaint for the intimidation charges was filed on September 12, 2016.
¶ 6 The complaint in the intimidation charges described several calls. In a call on February 2, 2016, Fleming called M.H. and told her that if any of the victims made a statement, she should "tell Triple A to break [their] [expletive] face." In that same call he told M.H. that he knew the phone was tapped but did not care.
¶ 7 The complaint also summarized a phone call from Fleming to M.H. on February 4, 2016, in which she told him she had found his phone. He told her to look up the phone number of "Alie" with an area code which began with the number nine. Fleming told M.H. to tell the person not to come to court because without the person's testimony the police had no case against Fleming on the armed robbery. Fleming asked M.H. if she had the watch, and she said she did.
¶ 8 The complaint also included a summary of a call from Fleming to M.H. on February 8, 2016, in which he told her to look up the number that begins with the number nine and give it to him. She read him a 904 area code number that police determined was listed to the victim P.S. Fleming told M.H. to call P.S. and tell him that if he did not come to court, Fleming would reimburse him for the stolen items, but that if he came to court, Fleming would not.
¶ 9 Also on February 8, 2016, Fleming called his mother and told her that he heard the armed robbery victims were talking about reimbursement. He asked his mother for their phone number and she gave him P.S.'s phone number. He told his mother to call the number and "tell [the armed robbery victims] if they don't come to court then they get reimbursed, but if they come to court then it's a loss, and tell them I'm gonna take them to court for what we had going on." Fleming asked his mother what property they wanted reimbursed, and she informed him that they wanted the watch and a book bag.
The Final Pretrial
¶ 10 At the final pretrial hearing on February 1, 2017, the State advised the trial court that it had offered Fleming a plea agreement that included dismissing and reading in the armed robbery charges or dismissing the armed robbery charges outright. The trial court explained to Fleming the difference between having the armed robberies dismissed outright and having them dismissed and read in. The court said:
If the armed robberies are dismissed outright, that means I can't consider them when I sentence you on the intimidation of witness. The benefit to you-Well, the detriment to you is you could be charged with them again if the State ever gets their witnesses together on the armed robbery. If you considered a dismissal and read-in, then I can consider it . The benefit will be you can never be charged with those armed robberies and I can order restitution on it.
(Emphasis added.) The trial court asked the prosecutor if he had turned over the jail call recordings to the defense, and he confirmed that the defense had had the recordings for months.
The Witnesses Become Unavailable
¶ 11 On February 13, 2017, the day trial was to start, the State filed a motion for a material witness warrant based on its affidavit asserting that M.H. had initially cooperated with police but that after Fleming repeatedly tried to contact her from jail, officers could no longer locate her. The State could not subpoena her for trial. It determined that she was no longer cooperative. The court granted the warrant request.
¶ 12 Then the State advised the trial court that it had been informed that Fleming had not yet listened to the jail call recordings. Trial counsel explained that somehow when Fleming's former trial counsel sent him discovery, it included only the calls from February 12 to March 1. The trial court adjourned the start of the trial to the next day to allow Fleming time to hear all of the jail call recordings.
The Plea Hearing
¶ 13 On February 14, 2017, the State advised the trial court that Fleming had listened to the jail recordings and "had a change of heart," deciding to plead to the two counts of intimidation of a witness. The State said if Fleming did that, it would dismiss the armed robberies outright, and not as read-ins. The prosecutor explained that Fleming did not want read-ins. The prosecutor stated that the dismissal was without prejudice. In theory, that would expose Fleming to the risk of being recharged in the future, but as a practical matter, the charges were unlikely to be refiled due to the lack of cooperating victims. The prosecutor noted that it was not made part of the negotiation, but "unless one of those victims comes forward and cooperates[,]" the "intention" was that charges would not be pursued.
¶ 14 The trial court confirmed with Fleming's trial counsel, in Fleming's presence, that there were no negotiations on the dismissal of the armed robbery counts. The trial court then explained to Fleming that dismissing the charges without prejudice meant that "they can reissue it as long as the statute of limitations isn't violated. Whether they do it or not will be totally up to them. Do you understand?" And Fleming said, "Yes." The trial court then went through the plea questionnaire and plea procedure. When the trial court got to the factual basis, Fleming agreed that he called M.H. and his mother to get them to dissuade P.S. from testifying against him at the armed robbery trial. The court accepted the plea and adjourned sentencing to the next day.
The Sentencing
¶ 15 At sentencing on February 15, 2017, the State reminded the trial court that the dismissed armed robbery charges were not read-ins but argued that they were relevant to sentencing because they showed the seriousness of the victim intimidation charges and reflected on Fleming's character. Trial counsel also reminded the court that the armed robbery charges were not part of the resolution of the intimidation case.
¶ 16 At sentencing, the State also advised the trial court about Fleming's repeated attempts to contact M.H. after the intimidation case had been charged and about the change in cooperation by M.H. after Fleming tried to contact her from the jail again. The State explained:
[M.H.], who actually hired a lawyer, came in, cooperated, did all of the right things, and seemed to be really concerned. Then when it came to come to trial she disappears. A material witness warrant is put out for her. Even her lawyer can't get her here. She stops responding to everybody. Detective Emanuelson, who did all of the work on these calls, notifies me that he checked the calls again and Mr. Fleming is trying to call her repeatedly over and over. He couldn't find any connected calls or accepted calls. Clearly, he is still trying to reach out to her. She, all of a sudden, changed so much that she ended up losing her job.... She hasn't shown up for work.... That is very sad. You have a young, single mother, who had a good job, and now doesn't have a job in part because of this defendant.
¶ 17 During his allocution, Fleming apologized to the trial court for the "inconvenience" and told the trial court he took "full responsibility." The trial court asked, "For what?" Fleming answered, "For the case that I pled guilty to." The trial court subsequently asked: "You are not taking any responsibility for the armed robberies?" Fleming responded, "I can take responsibility for them, too."
¶ 18 The trial court in its sentencing comments first discussed the problem the community is having with intimidation of witnesses and then explicitly said it was not sentencing Fleming on the armed robberies, stating:
There is no question you were the leader of that armed robbery crew. I am not going to sentence you for the armed robbery. I can't. I wish I could. I'm sentencing you for the intimidation of a witness. But I can and do consider your role in those armed robberies and the games you were playing with regard to those armed robberies.
(Emphasis added.)
¶ 19 The trial court immediately returned to the intimidation topic, saying that Fleming's intimidation had worked. The four armed robbery victims did not come back to court and neither did M.H. The court rejected Fleming's excuse for the intimidation calls-that he was just trying to avoid conviction on the armed robbery so that he could be with his one-year-old daughter-saying his intimidation jeopardized the child:
The mother of your child, the woman that you say you love, you forced me to issue a warrant for her arrest. She could have been in the hell hole that is the county jail just like you. Then who would've cared for your one year old? You forced me to do that. She cooperated. There is no doubt she is afraid of you. She lost her job because of you. I don't know if she will ever let you see that kid.
(Emphasis added.) Ultimately, as a condition of extended supervision, the court ordered no contact with M.H., saying:
You can't have contact with her. You will have somebody else arrange for your child to talk to you. Talk to your mother about it. I don't want you talking to [M.H.] ... because she is a victim in this case as far as I am concerned. Because she is the one that had to run away because she was so afraid of you.
(Emphasis added.)
¶ 20 The trial court finally sentenced Fleming on count one to four years' initial confinement and three years' extended supervision with 380 days of credit for pretrial incarceration as requested by the defense and over the objection of the State. The 380 days were calculated from the date of Fleming's arrest on the armed robberies through conviction on the intimidation charges. On count two, the court sentenced Fleming to a consecutive term of three years' initial confinement and three years' extended supervision. The court also imposed a condition of no contact with M.H. on Fleming's extended supervision.
¶ 21 Subsequently, in a letter to the trial court dated May 3, 2017, the Department of Corrections advised that it believed the 380 days of credit for pretrial incarceration was in violation of WIS. STAT. § 973.155(1).
¶ 22 Fleming filed a postconviction motion requesting that he be awarded 381 days of sentence credit and that the court remove the no-contact order as to M.H. The trial court partially granted the request for additional sentence credit and denied the request for modification of the no-contact order. Fleming appeals.
STANDARD OF REVIEW
¶ 23 The determination of sentence credit is a legal question we review independently of the trial court while benefiting from its analysis. State v. Carter , 2010 WI 77, ¶ 12, 327 Wis. 2d 1, 785 N.W.2d 516.
¶ 24 We review the imposition of a condition of supervision for an improper exercise of discretion. Stewart , 291 Wis. 2d 480, ¶ 11.
DISCUSSION
I. Fleming is not entitled to credit against the intimidation of a witness sentence for his pretrial custody on the dismissed armed robbery charges.
¶ 25 Fleming's first argument is that the time he spent in custody on the dismissed armed robbery charges should be credited to him under WIS. STAT. § 973.155(1). That statute reads:
(1)(a) A convicted offender shall be given credit toward the service of his or her sentence for all days spent in custody in connection with the course of conduct for which sentence was imposed. As used in this subsection, "actual days spent in custody" includes, without limitation by enumeration, confinement related to an offense for which the offender is ultimately sentenced, or for any other sentence arising out of the same course of conduct, which occurs:
1. While the offender is awaiting trial;
2. While the offender is being tried; and
3. While the offender is awaiting imposition of sentence after trial.
Id. (emphasis added). Fleming argues that the armed robbery custody was "in connection with the course of conduct for which sentence was imposed," i.e., the intimidation of a witness charge because: (1) he "accepted responsibility" for the armed robbery; and (2) the court "considered" it at the sentencing on the intimidation charges.
¶ 26 Although he acknowledges that neither supports his argument directly, Fleming relies on the reasoning in Floyd and Straszkowski . All of his arguments start with the premise that when Fleming said he "accepted responsibility" for the armed robberies, he was "admitting" the armed robberies, such that he could get credit under the analysis of Floyd and Straszkowski .
¶ 27 There are two problems with Fleming's argument on this point. First, Fleming did not "admit" it and the trial court did not "consider" it in the manner of Floyd . Second, and more importantly, this court rejected this argument in State v . Piggue , 2016 WI App 13, 366 Wis. 2d 605, 875 N.W.2d 663 (2015).
¶ 28 In Floyd the defendant sought credit for time spent in custody on an armed robbery charge that had been dismissed and read in. The Wisconsin Supreme Court, interpreting WIS. STAT. § 973.155(1), held that "pre-trial confinement on a dismissed charge that is read in at sentencing relates to 'an offense for which the offender is ultimately sentenced' " and granted credit. See Floyd , 232 Wis. 2d 767, ¶ 32 (citing § 973.155(1)(a) ). Thus, a read-in entitles a defendant to credit under § 973.155(1).
¶ 29 Here, there is no dispute that the armed robbery was not a read-in and Floyd therefore does not entitle Fleming to credit. Nonetheless, Fleming argues that we should expand the holding in Floyd to all non-read-in "admissions." He argues the reasoning the court used for giving credit for read-ins in Floyd was that in considering the armed robbery the sentencing court gave the read-ins more weight because they were "admissions." See id. , 232 Wis. 2d 767, ¶ 27. Therefore, Fleming argues, he should get credit because he "admitted" the armed robberies when he said he "accepted responsibility," even though they were not read in, and the court said it was "considering" the armed robbery.
¶ 30 We reject Fleming's "admission" argument because it was expressly rejected by this court in Piggue . Piggue sought credit against his intimidation of a witness sentence for time spent in custody on a sexual assault for which he was acquitted. Piggue , 366 Wis. 2d 605, ¶ 1. The sexual assault was neither a read-in nor a dismissal. Piggue argued, as does Fleming, that because the sentencing court "considered" his acquitted charge of sexual assault, he should get credit for the pretrial detention on that charge even though it was not a read-in. See id. , ¶ 7. Like Fleming, Piggue sought expansion of the Floyd holding beyond read-ins to acquittals and other non-read-ins considered by a court at sentencing. See Piggue , 366 Wis. 2d 605, ¶ 12. Piggue argued that the court should not follow the narrow limits of Floyd because the reasoning on which Floyd was based, i.e., that a read-in is an "admission," had been abrogated in Straszkowski .
¶ 31 We conclude, as did the court in Piggue , that Fleming's argument fails. Straszkowski was not a WIS. STAT. § 973.155(1) pretrial custody credit case at all. It was a withdrawal of a guilty plea appeal where Straszkowski argued that he should be entitled to plea withdrawal because neither his trial counsel nor the court told him at the time of sentencing that a read-in was considered an admission to the facts of the read-in charge. Straszkowski , 310 Wis. 2d 259, ¶2. The Wisconsin Supreme Court explicitly rejected his argument and stated that a trial court should not deem a read-in to be admission of guilt by the defendant. Id. , ¶ 3. The court then held that Straszkowski was not entitled to plea withdrawal because although the trial court had considered the read-in for sentencing, the trial court had explicitly said it understood he was not admitting the read-in charge. See id. , ¶ 96. Accordingly, we agree with the reasoning in Piggue and conclude that under Straszkowski Fleming's argument for credit for a non-read-in fares no better than Piggue's argument for credit for an acquittal.
¶ 32 Additionally, as the State points out, in Piggue this court has already held that Straszkowski did not alter the holding in Floyd : "Even though Straszkowski may have clarified that read-ins are not to be construed as admissions, the fact is that read-ins are still distinguishable from acquittals and non-read-in dismissals." Piggue , 366 Wis. 2d 605, ¶ 13. "Floyd therefore remains good law." Id. We specifically rejected Piggue's challenge, saying, "We therefore decline to expand WIS. STAT. § 973.155(1) beyond the limits set by Floyd ." Id.
¶ 33 We conclude that Fleming is not entitled to any credit for the time spent in custody on the dismissed armed robberies. They were not read-ins and do not fall within the mandatory credit of WIS. STAT. § 973.155(1) as interpreted by the case law. Read-ins are different from acquittals and other non-read-ins. A defendant who agrees to a read-in agrees that his sentence can be increased based on the read-in. See Floyd , 232 Wis. 2d 767, ¶ 26 ; State v. Frey , 2012 WI 99, ¶¶ 68-73, 343 Wis. 2d 358, 817 N.W.2d 436. In return, the defendant cannot be separately prosecuted for it, or convicted of it, or sentenced to the maximum possible penalties for it. A dismissed charge that is not read in gives the defendant no protection from future conviction and sentence exposure on the conviction.
¶ 34 And while it is true that the trial court may consider a dismissed charge that is not a read-in at sentencing, that is true for all matters of a defendant's background and character. The trial court can consider past record, both charged and uncharged offenses, as part of character. No admission is required. Piggue , 366 Wis. 2d 605, ¶ 13. Here, Fleming explicitly declined the opportunity to have the armed robberies treated as read-ins. As the trial court made very clear, it did not sentence him on the armed robberies. Neither by analogy nor by the holdings of Floyd , Straszkowski , or Piggue is Fleming entitled to any credit here. Accordingly, we need not address his arguments on the proper amount of credit.
II. The trial court properly exercised its discretion in prohibiting Fleming from having contact with M.H.
¶ 35 Fleming acknowledges that pursuant to WIS. STAT. § 973.049(2), the trial court here had authority to prohibit him from contacting victims, witnesses, or co-actors to a crime considered at sentencing. Nonetheless, despite the fact that the court found M.H. to be a victim, he argues that M.H. is not a victim and that the court therefore erred in imposing the no-contact provision. Although he acknowledges that the trial court has the right to determine who a victim is under § 973.049(2), he disputes the court's finding here. Instead, he argues that P.S., who was a victim of the armed robbery, is the victim of the intimidation. He does not explain why M.H. cannot also be a victim. Additionally, he argues that M.H. wants to have contact with Fleming so he can see their child and that she has signed an affidavit to that effect. Further, he argues that the statute permits a no-contact order only in the interest of public protection, and that, he argues, is not a factor here.
¶ 36 As the State correctly points out, sentencing courts have wide discretion to impose conditions of supervision that appear reasonable and appropriate. Stewart , 291 Wis. 2d 480, ¶ 11. Courts have considerable latitude in setting conditions of extended supervision. State v. Miller , 2005 WI App 114, ¶ 11, 283 Wis. 2d 465, 701 N.W.2d 47. A condition is reasonable if "it assists the convicted individual in conforming his or her conduct to the law." State v. Rowan , 2012 WI 60, ¶ 10, 341 Wis. 2d 281, 814 N.W.2d 854. "It is also appropriate for [trial] courts to consider an end result of encouraging lawful conduct, and thus increased protection of the public, when determining what individualized ... conditions are appropriate for a particular person." Id. , ¶ 10.
¶ 37 Thus, it is clear that the trial court had the authority to order no contact with M.H. both because it determined she was a victim of the intimidation charge and because the court thought the condition was necessary to assist Fleming in obeying the law and to protect M.H. and the community. There is no requirement that the defendant agree with a condition, and no requirement that the victim assent to a no-contact order. The trial court clearly explained why it was imposing the condition: because Fleming put M.H. in the position of assisting Fleming in committing the crime of intimidation of a witness, and then when she cooperated with law enforcement, Fleming hounded her out of a job, home, and town. She was a victim of his controlling and criminal behavior as the trial court made clear. As the court also noted at sentencing, Fleming is not barred from contact with his daughter and can make other arrangements to contact her. The court's reasons were clearly explained and were supported by the record and proper legal principles. Therefore, we affirm the imposition of this condition as a proper exercise of discretion.
¶ 38 For all of the foregoing reasons, we affirm the judgment and decision denying Fleming's motion for sentence modification.
By the Court. -Judgment and order affirmed.
Not recommended for publication in the official reports.

The postconviction court granted Fleming's motion in part, giving him two additional days of sentence credit. It denied his request for removal of the no-contact order.

All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.

The sentencing court considered M.H. to be a victim, so we refer to her by her initials. The criminal complaint lists M.H.'s last name as beginning with a P., but all other records indicate that her last name begins with H., so we refer to her as M.H.