STATE of Wisconsin, Plaintiff-Respondent,

v.

Arthur BEIERSDORF, Defendant-Appellant.

Court of Appeals

*Nos. 95–1234–CR, 95–1235–CR. Submitted on briefs December 3, 1996.—Decided February 4, 1997.*

(Also reported in 561 N.W.2d 749.)

493

For the defendant-appellant the cause was submitted on the briefs of *Mark Lukoff*, assistant state public defender.

For the plaintiff-respondent the cause was submitted on the briefs of *James E. Doyle*, attorney general, and *James M. Freimuth*, assistant attorney general.

Before Fine, Schudson and Curley, JJ.

SCHUDSON, J. Arthur Beiersdorf appeals from the judgments of conviction for second-degree sexual assault of a child and bail jumping, and from the trial court's order denying his motion for postconviction relief. He argues that the trial court erred by not applying the forty-four days of sentence credit he received on the stayed sentence for bail jumping to the prison sentence he received for sexual assault. He also argues that the trial court erred in ordering him to pay restitution for genetic testing. We affirm.

## I. BACKGROUND

On August 26, 1994, at his initial appearance on a charge of felony second-degree sexual assault of a child under age sixteen, Beiersdorf was released on a $10,000 personal recognizance bond. On September 20, 1994, Beiersdorf returned to court and pled guilty to the sexual assault charge. Sentencing was adjourned.

494

On October 20, 1994, Beiersdorf was charged with bail jumping and two counts of misdemeanor sexual intercourse with a child over age sixteen. The complaint alleged that while Beiersdorf was free on bond in the felony sexual assault case, he violated terms of his bond by having contact and sexual intercourse with the victim of that offense. Bail was set at $10,000 cash. Failing to post the cash bail, Beiersdorf remained in custody.

On December 2, 1994, pursuant to a plea agreement, Beiersdorf pled guilty to the bail jumping charge; the trial court granted the State's motion to dismiss the two misdemeanor sexual intercourse charges. For second-degree sexual assault, the trial court sentenced Beiersdorf to ten years in prison. For bail jumping, the trial court sentenced Beiersdorf to five years in prison but stayed the latter sentence and placed him on probation for five years, consecutive to the ten year sentence, to begin, as the trial court told Beiersdorf, "after the prison term was served. Terms and conditions of probation, and that will kick in after you're paroled." On the bail jumping stayed sentence, the trial court awarded forty-four days credit for the time Beiersdorf had remained in custody between his bail jumping arrest and sentencing. The court also ordered that, "as a term and condition of probation," Beiersdorf pay $250 reimbursement for the cost of the genetic testing performed as a result of the original sexual assault charge.

## II. SENTENCE CREDIT

Beiersdorf argues that he is entitled to forty-four days credit against his ten-year sentence for second-degree sexual assault of a child. The parties agree that our analysis must begin with § 973.155(1)(a), STATS., which provides:

> **Sentence credit. (1)**(a) A convicted offender shall be given credit toward the service of his or her sentence for all days spent in custody in connection with the course of conduct for which sentence was imposed. As used in this subsection, "actual days spent in custody" includes, without limitation by enumeration, confinement related to an offense for which the offender is ultimately sentenced, or for any other sentence arising out of the same course of conduct, which occurs:
> 1. While the offender is awaiting trial;
> 2. While the offender is being tried; and
> 3. While the offender is waiting imposition of sentence after trial.

Denying Beiersdorf's postconviction motion, the trial court concluded that he was not entitled to forty-four days credit on the sexual assault offense because he had been released on bond on that charge and, therefore, was not "in custody in connection with" the sexual assault offense. We agree.

■■■■
 The application of § 973.155(1)(a), STATS., to undisputed facts presents a question of law this court reviews *de novo. State v. Collett*, 207 Wis. 2d 321, 323, 558 N.W.2d 642, 643 (Ct. App. 1996). For credit to be awarded, two requirements must be satisfied: (1) the defendant must have been "in custody" for the period in question; and (2) the period "in custody" must have been "in connection with the course of conduct for which the sentence was imposed." Section 973.155(1)(a). In this case, Beiersdorf unquestionably was "in custody" from October 19, 1994, when he was arrested for bail jumping, to December 2, 1994, when he was sentenced for bail jumping and second-degree sexual assault. The issue, therefore, is whether Beiersdorf's forty-four days of custody were "in connection

with the course of conduct for which [his ten-year sexual assault] sentence was imposed."

Beiersdorf argues that "common sense requires" that he be awarded the credit against his sexual assault prison sentence. He contends that it is "absurd" that he "would have to violate the consecutive probation, have that probation revoked, and begin serving the imposed and stayed sentence before he would receive 44 days jail-time credit." We disagree. For any number of sound reasons, a sentencing court may decide to stay a sentence and order probation on one count consecutive to incarceration on another count. Beiersdorf offers no authority to suggest that when a sentencing court does so, it must shift credit due on the stayed sentence to the imposed sentence.

Beiersdorf asserts that *State v. Boettcher*, 144 Wis. 2d 86, 423 N.W.2d 533 (1988), requires the credit he seeks. Again, we disagree. *Boettcher* addressed a different sentence-credit issue and, if anything, *Boettcher* actually supports the State's position. It examined whether "dual sentence credit" should be applied to two consecutive sentences—one stemming from a crime for which the defendant had been placed on probation, and the other stemming from a subsequent crime resulting in revocation of the prior probation.[1] *Id.* at 87, 423 N.W.2d at 534. It explained that "in connection with

---

[1] Thus, in *Boettcher*, the court resolved the credit issue under § 973.155(1)(a) and (b), STATS., the latter of which provides:

> The categories in par. (a) include custody of the convicted offender which is in whole or in part the result of a probation or parole hold under s. 304.06(3) or 973.10(2) placed upon the person for the same course of conduct as that resulting in the new conviction.

By contrast, any credit due Beiersdorf, who was not on probation or parole, could only be awarded under § 973.155(1)(a).

the course of conduct for which sentence was imposed" under § 973.155(1)(a), STATS., means the same thing as the corresponding language in 18 U.S.C. § 3568: " 'in connection with the offense or acts for which sentence was imposed.' " *Id.* at 93, 423 N.W.2d at 536. Denying dual credit, *Boettcher* thus clarified that § 973.155(1)(a) provides sentence credit only for the custody connected to the charges to which the custody was specifically linked.

Therefore, although § 973.155(1)(a), STATS., also refers to "confinement related to an offense for which the offender is ultimately sentenced," and although in rather obvious ways Beiersdorf's bail jumping was figuratively "related to" his second-degree sexual assault, his "custody" literally was not "confinement related to" the sexual assault for purposes of sentence credit under § 973.155(1)(a), STATS. Although a defendant may perceive that custody is "at least partly 'in connection with' " another crime, that does not mean that the custody, for credit purposes, is related to "the course of conduct for which sentence was imposed." *See State v. Beets*, 124 Wis. 2d 372, 376, 369 N.W.2d 382, 384 (1985); *see also State v. Abbott*, 207 Wis. 2d 621, 558 N.W.2d 927 (Ct. App. 1996).

Accordingly, we conclude that because Beiersdorf posted a personal recognizance bond on the felony sexual assault charge and remained on that bond until his sentencing, and because he was in custody on cash bail only on the subsequent bail jumping and sexual intercourse charges, the forty-four days in custody, under § 973.155(1)(a), STATS., was "custody" only "in connec-

tion with the course of conduct for which sentence was imposed" and stayed on the bail jumping.[2]

## III. PAYMENT FOR GENETIC TESTING

According to the criminal complaint charging Beiersdorf with second-degree sexual assault of a child, blood samples from Beiersdorf and his victim, along with a tissue sample from the fetus being carried by his victim, were sent for DNA testing to the Memorial Blood Center of Minneapolis. Testing established the overwhelming probability that Beiersdorf was the father of the fetus. At the conclusion of sentencing, the

---

[2] In his reply brief to this court, Beiersdorf invokes § 969.13(1), STATS., which provides:

**Forfeiture. (1)** If the conditions of the bond are not complied with, the court having jurisdiction over the defendant in the criminal action shall enter an order declaring the bail to be forfeited.

Beiersdorf notes that § 969.03(2), STATS., requires as a condition of bail that a defendant "shall not commit any crime." Therefore, he argues, upon his arrest for bail jumping his bail on the sexual assault charge should have been forfeited. Thus, he maintains, "[o]nly the lack of paperwork revoking bail in the sexual assault case prevents [him from] receiving 44 days jail-time credit in the sexual assault case."

We note that defense attorneys, in countless cases, do ask trial courts to convert personal recognizance bonds to cash bail when their clients have been arrested and do remain in custody on cash bail on subsequent charges. They do so precisely because they want to assure sentence credit on both offenses. That, however, did not occur in this case. Whether, somehow, that should have occurred by operation of law under § 969.13, STATS., is an issue raised by Beiersdorf for the first time in reply and is, therefore, an issue we will not address. *See Swartwout v. Bilsie*, 100 Wis. 2d 342, 346 n.2, 302 N.W.2d 508, 512 n.2 (Ct. App. 1980).

prosecutor asked, "Would the Court be willing to order reimbursement for the cost of the genetic testing that was done in this case?" The court responded, "He will be in prison awhile [sic] but, yes, as a term and condition of probation, I'll do that." Beiersdorf argues that the trial court had no authority to order him "to pay for genetic tests, either as a cost, restitution, or as a condition of probation."

Denying Beiersdorf's postconviction motion, the trial court explained:

> The DNA surcharge[3] was not imposed as a "cost" under sec. 973.06, Wis. Stats.; it was imposed as restitution which is reasonably related to the rehabilitation of the defendant. Its imposition reflects a cost and encumbrance which the government has incurred as a direct result of the defendant's commission of a crime. Given the broad authority of the court to impose restitution as a reasonable condition of the defendant's sentence and probation/parole, the court declines to vacate its present order.

The State agrees with Beiersdorf that the cost of genetic testing is not assessable against him as "resti-

---

[3] The State notes that the trial court, in its written decision, "erroneously referred to the expenses of genetic testing as the 'DNA surcharge.' " The State goes on to explain:

> Under sec. 973.046(1)(a), STATS., the "DNA surcharge" of $250 is a mandatory assessment that is to be applied in every case in which a defendant is convicted of violating a particular statute—including sec. 948.02(2), STATS., as in this case—regardless of whether any genetic testing was actually done. The assessment of the expenses of genetic testing in the present case is *in addition to* the DNA surcharge of $250 and is determined by the actual expenses incurred by the State in pursuing the genetic testing at the Memorial Blood Center of Minneapolis. The record does not disclose any specific dollar amount for this genetic testing.

tution" under § 973.20(1), STATS.,[4] because neither the State nor the testing facility is a "victim" of the crime under that statute. *State v. Evans*, 181 Wis. 2d 978, 983-84, 512 N.W.2d 259, 261 (Ct. App. 1994).[5] The State contends, however, that the trial court did have authority to order Beiersdorf to pay for the DNA testing as a condition of probation under § 973.09(1)(a), STATS.,[6] and as costs under § 973.06(1)(c), STATS.[7] We agree.

---

[4] Section 973.20(1), STATS., in part provides:

**973.20 Restitution. (1)** When imposing sentence or ordering probation for any crime, the court, in addition to any other penalty authorized by law, shall order the defendant to make full or partial restitution under this section to any victim of the crime or, if the victim is deceased, to his or her estate, unless the court finds substantial reason not to do so and states the reason on the record.

[5] Beiersdorf does not dispute, however, that the blood center had a "relationship on the record to the crime of conviction." *See State v. Mattes*, 175 Wis. 2d 572, 581, 499 N.W.2d 711, 715 (Ct. App. 1993).

[6] Section 973.09(1), STATS., provides:

**Probation.** . . . the court, by order, may withhold sentence or impose sentence under s. 973.15 and stay its execution, and in either case place the person on probation to the department for a stated period, stating in the order the reasons therefor. The court may impose any conditions which appear to be reasonable and appropriate. The period of probation may be made consecutive to a sentence on a different charge, whether imposed at the same time or previously.

[7] In relevant part, § 973.06, STATS., provides:

**Costs. (1)** Except as provided in s. 93.20, the costs taxable against the defendant shall consist of the following items and no others:

. . . .

(c) Fees and disbursements allowed by the court to expert witnesses.

501

## A. As a condition of probation under § 973.09(1)(a), STATS.

Section 973.09(1)(a), STATS., provides a trial court "broad discretion to place a convicted person on probation and to impose any conditions which appear to be reasonable and appropriate' on that probation." *State v. Heyn*, 155 Wis. 2d 621, 627, 456 N.W.2d 157, 160 (1990) (quoting § 973.09(1)(a)) (restitution of $4,000 for burglary alarm installation reasonable and appropriate where burglary reduced victim's sense of security). Under § 973.09(1)(a), whether a probation condition is reasonable and appropriate "is determined by how well it serves the dual goals of probation; namely, the rehabilitation of the offender and the protection of the state and community interest." *State v. Brown*, 174 Wis. 2d 550, 554, 497 N.W.2d 463, 464 (Ct. App. 1993) (restitution of $7,000 to sexual assault victim for tuition reasonable and appropriate where victim changed schools to avoid classmates' harassment resulting from assault). We will uphold a sentencing court's discretionary determination of a probation condition unless the court erroneously exercised discretion. *Id.* at 553, 497 N.W.2d at 464.[8]

---

[8] A trial court's discretionary determination of a probation condition may be reasonable and appropriate even though the trial court failed to accurately identify the specific legal authority for its order. *See State v. Fishnick*, 127 Wis. 2d 247, 264, 378 N.W.2d 272, 281 (1985). Here, it is not clear whether the sentencing court intended to assess the expense of DNA testing as a condition of probation, as stated in its sentencing pronouncement and reflected on the judgment of conviction for bail jumping, or as restitution related to the sexual assault conviction, as implied by its written decision invoking "broad authority . . . to impose restitution as a reasonable condition of

■

First, we have no difficulty concluding that a sentencing court reasonably may determine that rehabilitation of a man who has sexually assaulted a child will be fostered by motivating his consciousness of all the consequences of his crime, including the expense of DNA testing to establish whether he is responsible for his victim's pregnancy. As in *Heyn*, Beiersdorf's payment "therefore impresses upon [him] the full extent of the harm caused by his . . . criminal activities and teaches [him] to consider more carefully the consequences of his . . . actions in the future. The community benefits, in turn, from the rehabilitative effects of the condition on the convicted person." *Heyn*, 155 Wis. 2d at 630, 456 N.W.2d at 161. As in *Brown*, Beiersdorf's payment "should aid in [his] rehabilitation by increasing his appreciation for the far-reaching consequences of his assault on the victim and serve to strengthen his sense of responsibility for his actions. The community also benefits from the rehabilitative effects of the . . . condition imposed on [Beiersdorf]." *Brown*, 174 Wis. 2d at 554, 497 N.W.2d at 464 (citation omitted).[9]

---

the defendant's sentence and probation/parole." Beiersdorf, however, challenges the authority of the sentencing court to order payment for the DNA testing on any basis; he does not base his challenge on the sentencing court's imprecise nomenclature.

[9] Although Beiersdorf's payments ultimately will go to the Memorial Blood Center of Minneapolis rather than to his victim, that is only the smallest step removed from the payments to the victims in *Heyn* and *Brown* that ultimately reimbursed them for payments to a burglar alarm company and a school system.

## B. As a cost/condition of probation under § 973.06 (1)(c), STATS.

██

Additionally, a "cost"-related condition of probation is proper if the "cost" is among those covered by § 973.06(1)(c), STATS. *State v. Amato*, 126 Wis. 2d 212, 218, 376 N.W.2d 75, 77-78 (Ct. App. 1985). Whether § 973.06(1)(c) provides authority for a sentencing court to order payment to the Memorial Blood Center of Minneapolis, a private facility, presents an issue requiring interpretation of a statute, subject to our independent review. *State v. Dodd*, 185 Wis. 2d 560, 564, 518 N.W.2d 300, 301 (Ct. App. 1994). Here, the sentencing court had authority to order payment of the DNA test expenses because they constituted a "cost" under § 973.06(1)(c).

In their supplemental briefs to this court, the parties have addressed the impact of *State v. Schmaling*, 198 Wis. 2d 757, 543 N.W.2d 555 (Ct. App. 1995), and *State v. Ferguson*, 202 Wis. 2d 233, 549 N.W.2d 718 (1996). Beiersdorf argues that "[n]othing in either

Further, contrary to Beiersdorf's additional argument, the condition is no less reasonable for having been imposed on the probation stemming from bail jumping directly involving the same victim. *See State v. Miller*, 175 Wis. 2d 204, 210, 499 N.W.2d 215, 217 (Ct. App. 1993) (condition of probation need not directly relate to crime for which defendant placed on probation where defendant needs to be rehabilitated from related conduct). *See also State v. James P.*, 180 Wis. 2d 677, 685-86, 510 N.W.2d 730, 733 (Ct. App. 1993) (probationary condition requiring delinquent to submit to blood testing to determine whether he was father of his sister's child was reasonably related to delinquent's rehabilitation even though such blood testing was unrelated to offense for which he was placed on probation).

*Schmaling* or *Ferguson* ... distinguishes between public and private entities" and he implies, therefore, that *Ferguson* places these DNA test expenses outside the definition of "costs." We disagree.

Section 973.06(1)(c), STATS., in part, defines "[c]osts as [f]ees and disbursements allowed by the court to expert witnesses." In *Ferguson*, the supreme court held that § 973.06(1)(c) "does not authorize the assessment of lab expenses against the defendant for testing controlled substances found in his possession." *Ferguson*, 202 Wis. 2d at 235, 549 N.W.2d at 719. The supreme court clearly confined its holding, however, to testing services performed by the state crime laboratory. The supreme court carefully explained:

> To constitute a fee under § 973.06(1)(c), the cost of performing a service must be more than an internal operating expense of a governmental unit which has been prorated or costed out; it must be chargeable to and payable by another.
> The legislature did not intend that the lab expenses be paid by another. As the State pointed out both in its brief and during oral argument before the court, from 1955 to 1969 the State Crime Laboratory was required by statute to estimate the cost of and fix charges for its services, which were then collected annually from local units of government at the rate of fifty percent of the cost of services performed. From 1969 to 1973 the statute itself fixed these charges. However, the legislature subsequently repealed this provision. Therefore the State Crime Laboratory no longer bills local units of government for the services that it provides, apparently absorbing the cost of such services as internal operating expenses.
> We fail to see how what have become routine operating expenses incurred by the State Crime

Laboratory during the course of criminal investigations can now be transformed into fees or disbursements. Those expenses, regardless of whether they are fixed or represent estimates, have not been charged to or paid by another unit of government since 1973. Accordingly, we conclude that the expenses incurred by the State Crime Laboratory in the course of a criminal investigation are not fees or disbursements under Wis. Stat. § 973.06(1)(c), and the State may not assess these lab expenses as costs.

Were we to accept the State's argument that these lab expenses are fees taxable against defendants as costs under § 973.06(1)(c), a whole panoply of expenses for services rendered by expert witnesses who are state employees, including expenses for polygraph tests, blood tests, handwriting analyses, and physical and mental examinations might also be construed as fees and taxed against defendants.

We are not aware that any of these expenses are now being viewed as costs taxable against defendants. Under the State's interpretation of the statute, all of them might be. Neither the language nor the legislative history of Wis. Stat. § 973.06(1)(c) indicates that the legislature intended defendants to bear a pro rata share of the operating expenses of the State Crime Laboratory or any other law enforcement unit.

*Id.* at 242-43, 549 N.W.2d at 722-23 (citations omitted).

We recognize that the supreme court then also commented, "Nor has the legislature indicated that the cost statute allows the State to recover investigative or litigation expenses." *Id.* at 243, 549 N.W.2d at 723. We read that general reference to "investigative . . . expenses," however, in context with the immediately preceding specific references to the state crime labora-

tory. We do not read that general observation, therefore, to preclude a sentencing court from invoking the authority of § 973.06(1)(c), STATS., that "allow[s]" it to order payment of "[f]ees . . . to expert witnesses." Given its emphasis on the special relationship between the State and its own crime laboratory, the supreme court's comment regarding "investigative . . . expenses" would hardly seem to preclude payment of fees to a private entity.

■

Indeed, nothing in *Ferguson* suggests any rejection of *Schmaling*, which concluded, in part, that restitution for expert witness fees of a private entity was a cost under § 973.06(1)(c), payable as a part of a sentence. *Schmaling*, 198 Wis. 2d at 763, 543 N.W.2d at 558. In *Schmaling*, Racine County retained an accident reconstruction expert to prepare for trial in a reckless homicide and reckless endangering safety case stemming from a highway accident.[10] *Id.* As the State argues:

> *Schmaling* and *Ferguson* are reconcilable. *Schmaling* stands for the proposition that under sec. 973.06(1)(c), Stats., a trial court may assess against a convicted defendant the expenses incurred by the state in retaining expert witnesses who are not state employees—in effect, "private" expert witnesses for whom a local unit of government actually pays during the course of prosecuting

[10] We note that in *Schmaling*, as in the instant case, the expert witness did not testify; both cases were resolved on guilty or no contest pleas. An expert witness under § 973.06(1)(c), STATS., however, is an expert witnesses regardless of whether he or she actually testifies in person. *State v. Ferguson*, 195 Wis. 2d 174, 180, 536 N.W.2d 112, 118-19 (Ct. App. 1995), *rev'd on other grounds*, 202 Wis. 2d 233, 549 N.W.2d 718 (1996).

the defendant. *Ferguson* simply bars such cost assessments when the expert witnesses are state employees who do not charge the local unit of government for their services.

■

As the supreme court in *Ferguson* also explained, "[t]he word 'fees' in § 973.06(1)(c) describes a fixed charge for a professional service rendered by an expert witness, a sum which is ordinarily charged to and payable by another." *Ferguson*, 202 Wis. 2d at 241, 549 N.W.2d at 922. In this case the expense for DNA testing required payment to another—a private facility—for professional services rendered by the experts who performed the blood and tissue analysis. Thus, these were "fees" under § 973.06(1)(c), STATS., and, therefore, under *Amato*, constitute "costs" payable, as a condition of probation.[11]

*By the Court.*—Judgments and order affirmed.

■

[11] Beiersdorf also argues that the factual record lacks specification of the amount payable to the blood center or evidence of a billing or payment. Such determinations, however, often are made subsequent to sentencing and, if disputed, are subject to trial court review. The lack of specificity in this record does not undermine the sentencing court's authority to order the payment.