**COURT OF APPEALS
DECISION
DATED AND FILED**

**August 8, 2024**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP2153-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2021CF156

**IN COURT OF APPEALS
DISTRICT IV**

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

 V.

THATCHER R. SEHRBROCK,

   DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Dodge County: JOSEPH G. SCIASCIA, Judge. *Affirmed*.

Before Kloppenburg, P.J., Nashold, and Taylor, JJ.

¶1   NASHOLD, J.  Thatcher Sehrbrock appeals the sentencing portion of a judgment of conviction for robbery with use of force as a party to a crime, and an order denying his postconviction motion. Specifically, Sehrbrock challenges a condition of probation requiring that an ignition interlock device be installed on

any motor vehicle that he owns or operates. He argues that the ignition interlock condition should be vacated because it is unreasonable or, in the alternative, because its duration of seven years is harsh and excessive. We reject Sehrbrock's arguments and affirm.

## BACKGROUND

¶2 The criminal complaint alleges that two masked teenagers, later identified as Sehrbrock and Avery Bence, entered a Beaver Dam store after midnight. Bence sprayed the store clerk with pepper spray and took several packs of cigarettes, after which a struggle ensued. When Bence called for help, Sehrbrock threw several canned drinks at the clerk. He and Bence then fled the scene on foot. Bence later told police that the plan was "to steal cigarettes and/or alcohol from a gas station."

¶3 The State charged Sehrbrock with armed robbery as a party to a crime. In exchange for Sehrbrock's no-contest plea, the State amended the charge to robbery with use of force as a party to a crime. This amendment reduced the maximum penalty from 40 years of imprisonment to 15 years. The circuit court accepted Sehrbrock's plea and ordered that a presentence investigation report (PSI) be prepared.

¶4 The PSI was filed prior to sentencing and, as relevant here, set forth Sehrbrock's version of the offense, his criminal history, and his history of substance abuse. Sehrbrock informed the PSI writer of the following. Sehrbrock participated in the robbery because he "was drunk and got peer pressured." He "had been drinking heavily prior to committing the offense and he blacked out." Sehrbrock first started drinking at age 12, and by ages 16 and 17, was "drinking approximately 1.75 liter[s] a day for a year straight." As a result, his skin had

2

"turned yellow."  Starting at age 14, he used LSD "a lot," and he also used amphetamines, codeine, ecstasy, mushrooms, cocaine, morphine, and nitrite inhalants.  After the offense, Sehrbrock sought treatment and stopped drinking alcohol.

¶5     Sehrbrock's mother informed the PSI writer that Sehrbrock's substance abuse started when he was in eighth grade.  She reported that at the time of the robbery, Sehrbrock "was drinking straight vodka heavily.  Not just that day, but every single day, all day, for months leading up to that incident."

¶6     The PSI notes that Sehrbrock was adjudicated in a juvenile proceeding for resisting an officer when he was 15 years old.  Sehrbrock explained to the PSI writer that he "was under the influence when [he] got picked up" for that offense and that he "resisted arrest."  The PSI also reflects that Sehrbrock had two prior felony drug convictions, and a pending misdemeanor charge for criminal damage to property (which, by the time of sentencing, had resulted in a conviction).  Sehrbrock told the PSI writer that his criminal record was the result of "[a] combination of being around [the] wrong people and poor choices because of alcohol and drug abuse."

¶7     At the sentencing hearing, the prosecutor discussed Sehrbrock's criminal history and, in addition to the offenses noted above, informed the court that Sehrbrock had an additional pending charge for hit and run.  The prosecutor also discussed the seriousness of the robbery offense, stating that the central question was whether this was a "prison case" or a "jail case."  Although the prosecutor said that "it certainly would not be wrong to order a prison sentence on a charge this serious," she nevertheless recommended a probationary period of six to eight years, with one year of conditional jail time and other conditions.  The

prosecutor noted the seriousness of the offense, Sehrbrock's "addiction issues," his young age, and the efforts that Sehrbrock had made prior to sentencing to address his substance abuse issues.

¶8      Defense counsel agreed with the PSI writer's sentencing recommendation for a withheld sentence and five years of probation with one year of conditional jail time.   Among other things, counsel noted Sehrbrock's "addictions" and his efforts to address them, his young age, and his honesty with the PSI writer.

¶9      Sehrbrock's mother also addressed the circuit court.  She said that Sehrbrock "has struggled with drug and alcohol addiction and as such has made some very poor decisions."  She asked the court not to send Sehrbrock to prison because it would not "address the actual root of the problem that led him here today."  Sehrbrock, who was 17 years old at the time of the offense and 18 years old at the time of sentencing, told the court:  "The night at the gas station I made a stupid impulsive decision and I was heavily drinking at that time.  Like every day."

¶10     Before imposing its sentence, the circuit court discussed Sehrbrock's criminal history and his extensive abuse of alcohol and drugs.  The court also discussed the harms that substance abuse inflicts on individuals and society, societal acceptance of alcohol and drug use, Sehrbrock's young age, and Sehrbrock's support from his family.

¶11     The circuit court stated that Sehrbrock's extensive criminal record indicated that "maybe it's time to do some prison."  However, the court accepted the parties' probation recommendation with one year of conditional jail time.  The court withheld sentence and placed Sehrbrock on probation for seven years, with

conditions that included one year of conditional jail time with work release privileges; no consumption of alcohol or other intoxicants; absolute sobriety; not going to bars, taverns, liquor stores or beer tents; and completion of AODA (Alcohol and Other Drug Abuse) programming as determined by Sehrbrock's probation agent.

¶12    In addition, although it was not requested by either party, the circuit court ordered the condition of probation that is at issue in this appeal:   that Sehrbrock have an ignition interlock installed on any vehicle he owns or operates for the duration of his seven-year term of probation.  In imposing this condition, the court stated, "Somebody who drinks as much as [Sehrbrock] drinks ought not be on the road unless he's in a car that has ignition interlock."  The court also held out the opportunity of discharging Sehrbrock from probation early:   "If you're doing really, really well on probation your agent might say he doesn't need seven years, he's good to go and I'll approve that."

¶13    Sehrbrock subsequently filed a postconviction motion requesting removal or modification of the ignition interlock condition.  Sehrbrock argued that the condition is unreasonable because it is not individualized to Sehrbrock or to the facts of his offense, and because it does not further his rehabilitation or the protection of the community.  Alternatively, Sehrbrock argued that the condition should be removed or reduced because its imposition for the full seven-year probationary period is "harsh and excessive."

¶14    At the hearing on Sehrbrock's postconviction motion, defense counsel argued that Sehrbrock had no history of offenses involving operation of a motor vehicle while intoxicated (OWI) and that the circuit court's conditions requiring that Sehrbrock not consume alcohol and maintain absolute sobriety

already addressed Sehrbrock's rehabilitation and the protection of society. Defense counsel also argued that the seven-year period for the ignition interlock is longer than what could statutorily be imposed on a repeat OWI offender. In response, the prosecutor argued that the ignition interlock condition was "reasonable and appropriate," but also said that she was "not convinced" that it needed to be for the full seven years of probation.

¶15    The circuit court denied Sehrbrock's motion. The court noted that alcohol was involved in the offense, that it "is a huge factor in Mr. Sehrbrock's inability to stay out of trouble," and is "directly related to his conduct." The court said that Sehrbrock "got in[to] a car with a bunch of people" and "agreed to go into a store and rob somebody to get alcohol." The court concluded that Sehrbrock's lack of OWIs was not a reason not to order the ignition interlock condition, telling Sehrbrock, "Once you get to the point where you're intoxicated, you have given the keys to your life to the devil. And everybody who is in contact with you is in danger because there's no telling what you're go[ing to] do." The court told Sehrbrock, "[Y]ou and alcohol teamed up and [you] got yourself into a lot of trouble." The court further stated, "I'm not [going to] put the public at risk," that "if there's something I can do to minimize their risk, I'm [going to] do it," and that the ignition interlock "is an easy thing, common sense thing, to do to protect you against yourself."

¶16    The circuit court also noted that Sehrbrock had been disciplined for violating the jail's alcohol and drug rules, saying, "[W]hat that tells me is substance abuse is an issue with Mr. Sehrbrock." Specifically, jail personnel had informed the court that Sehrbrock reported to serve his sentence under the influence of controlled substances and had to be sent to the hospital by ambulance and had on another occasion been caught with drugs. The court stated that it

6

would not lift the ignition interlock condition until Sehrbrock showed the court that he was "successfully dealing with [his] alcohol issue and that there's some good reasons that we can lift it." The court said that if Sehrbrock returned to court with some proof that the condition is no longer necessary and is an unreasonable burden, the court would "gladly consider lifting it." The court told Sehrbrock, "[Y]ou're [going to] have to show me that you're dealing with this. And so far you haven't been able to do it."

¶17    This appeal follows.

## DISCUSSION

¶18    Sehrbrock argues that the circuit court erroneously exercised its discretion by imposing the ignition interlock requirement as a condition of probation. Specifically, he argues that the condition is not reasonable or appropriate, and, in the alternative, that the condition's duration is harsh and excessive. We address, and reject, these arguments in turn.

### Reasonable and Appropriate

¶19    A sentencing court's authority to impose conditions on a term of probation is derived from statute. *See* *State v. Sepulveda*, 119 Wis. 2d 546, 554, 350 N.W.2d 96 (1984). When a sentencing court places the defendant on probation, "[t]he court may impose any conditions which appear to be reasonable and appropriate." WIS. STAT. § 973.09(1)(a) (2021-22).[1] "'Sentencing courts have wide discretion'" in imposing conditions of probation, *State v. King*, 2020

---

[1] All references to the Wisconsin Statutes are to the 2021-22 version.

WI App 66, ¶20, 394 Wis. 2d 431, 950 N.W.2d 891 (quoted source omitted), and "such discretion is subject only to a standard of reasonableness and appropriateness," *State v. B. Miller*, 2005 WI App 114, ¶11, 283 Wis. 2d 465, 701 N.W.2d 47. A condition meets that standard if it is "reasonably related" to "the dual goals of supervision"—rehabilitation and public protection. *B. Miller*, 283 Wis. 2d 465, ¶¶11, 13.

¶20 "When a defendant seeks to have conditions of his or her supervision changed, the defendant bears the burden of showing cause for the modification." *King*, 394 Wis. 2d 431, ¶24; *see also State v. Hays*, 173 Wis. 2d 439, 448, 496 N.W.2d 645 (Ct. App. 1992) (stating that the proponent bears the burden "to establish by a clear preponderance of the evidence that there is cause to modify the terms and conditions of [supervision]"). We "'review such conditions under the erroneous exercise of discretion standard.'" *King*, 394 Wis. 2d 431, ¶25 (quoted source omitted). This court must "look for reasons to sustain a circuit court's discretionary decision." *State v. Muth*, 2020 WI 65, ¶14, 392 Wis. 2d 578, 945 N.W.2d 645. "The [circuit] court is presumed to have acted reasonably in sentencing." *State v. Ledford*, 114 Wis. 2d 562, 566, 339 N.W.2d 361 (Ct. App. 1983). A circuit court's "[d]iscretion contemplates a process of reasoning which must depend on facts that are of record or that are reasonably derived by inference from the record." *State v. Handley*, 173 Wis. 2d 838, 842-43, 496 N.W.2d 725, 727 (Ct. App. 1993).

¶21 Sehrbrock argues that the ignition interlock condition is not reasonably related to his rehabilitation or the protection of the public and instead "reflects only the circuit court's idiosyncrasies." *See State v. Oakley*, 2001 WI 103, ¶13, 245 Wis. 2d 447, 629 N.W.2d 200 ("[J]udges should not abuse their discretion by imposing probation conditions … that reflect only their own

idiosyncrasies" but instead "should use their discretion in setting probation conditions to further the objective of rehabilitation and protect society and potential victims from future wrongdoing."), *opinion clarified on denial of reconsideration*, 2001 WI 123, 248 Wis. 2d 654, 635 N.W.2d 760.[2] We reject Sehrbrock's arguments.

---

[2] As part of his argument that the ignition interlock condition is unreasonable, Sehrbrock appears to advance arguments regarding sentencing generally versus conditions of probation specifically. For example, he relies on **State v. Alexander**, 2015 WI 6, ¶22, 360 Wis. 2d 292, 858 N.W.2d 662, for its conclusion that, in sentencing a defendant, "[t]he circuit court's proper exercise of discretion includes individualizing the sentence 'to the defendant based on the facts of the case.'" (Quoted source omitted.) He then focuses on the ignition interlock condition specifically, arguing that the condition is not individualized to him or his offense. As Sehrbrock acknowledges, the specific standard applicable to a condition of probation is whether the condition is reasonably related to the defendant's rehabilitation and the protection of the public. As noted above, this is a discretionary decision and a court's discretion "contemplates a process of reasoning which must depend on facts that are of record or that are reasonably derived by inference from the record." **State v. Handley**, 173 Wis. 2d 838, 842-43, 496 N.W.2d 725 (Ct. App. 1993). To the extent that Sehrbrock means to separately argue that the court's exercise of discretion is not individualized to Sehrbrock or not supported by the facts of record, we reject that argument based on the same facts of record that support our "reasonably related" conclusion, discussed in the text of our opinion.

Citing **State v. Gallion**, 2001 WI 42, 270 Wis. 2d 535, 678 N.W.2d 197, Sehrbrock also appears to suggest that the circuit court failed to provide an adequate explanation for the ignition interlock condition. *See Gallion*, 270 Wis. 2d 535, ¶¶4, 39 (judges are "required to provide a 'rational and explainable basis' for the sentence." (quoted source omitted)). It is unclear whether Sehrbrock intends to advance this as a separate argument. We note, for example, that the limited discussion on this point appears under the subheading, "The condition requiring an [ignition interlock] is not reasonably related to Mr. Sehrbrock's rehabilitation or conviction." This subheading does not include a suggestion that the court failed to provide an adequate *explanation* for sentencing; rather, the heading appears to inaccurately recite the standard related to a condition of probation: namely, that the condition be reasonably related to rehabilitation and protection of the public. *See* **State v. B. Miller**, 2005 WI App 114, ¶13, 283 Wis. 2d 465, 701 N.W.2d 47. To the extent that Sehrbrock intends to argue that the court did not provide an adequate explanation, we reject that argument. As our discussion in the text of our opinion demonstrates, the court provided an adequate explanation for the ignition interlock condition. Moreover, even if the court had not provided an adequate explanation, this court must "look for reasons to sustain a circuit court's discretionary decision." **State v. Muth**, 2020 WI 65, ¶14, 392 Wis. 2d 578, 945 N.W.2d 645.

¶22    In imposing the ignition interlock condition, the circuit court stated, "Somebody who drinks as much as [Sehrbrock] drinks ought not be on the road unless he's in a car that has ignition interlock."  At the time it imposed the condition, the court had been informed that Sehrbrock had a pending hit and run charge in another county.  The court was therefore aware of the possibility that Sehrbrock had access to a vehicle, had operated a vehicle in the past, and had done so in an unlawful manner.  *See Elias v. State*, 93 Wis. 2d 278, 284, 286 N.W.2d 559 (1980) (sentencing court may consider "pending charges for which there has been no conviction").

¶23    The circuit court also had before it information that alcohol and intoxication were involved in the robbery offense for which Sehrbrock was being sentenced and that Sehrbrock had an extensive history of alcohol and other substance abuse.  This includes that Sehrbrock committed the robbery in this case—his third felony by the age of 17—while "heavily drinking" to the point of a "black out," that he had gone to the store in a vehicle with others for the purpose of stealing alcohol, and that during the year prior to the robbery, while he was 16 and 17 years old, he had been drinking approximately 1.75 liters of hard liquor every day.  Alcohol not only played a role in the robbery offense but in past offenses as well.  As noted, according to the PSI, Sehrbrock was adjudicated in a juvenile proceeding for resisting an officer when he was 15 years old.  Sehrbrock explained to the PSI writer that he "was under the influence when [he] got picked up" for that offense, and that his criminal record was a result of "[a] combination of being around [the] wrong people and poor choices because of alcohol and drug abuse."

¶24    The circuit court was well aware of the role of substance abuse in Sehrbrock's criminal history and of the need to protect the public from

Sehrbrock's conduct. The court began its sentencing remarks by telling Sehrbrock's family members who were present in the courtroom that "this member of your family is in a lot of trouble and he needs your support." The court then noted that Sehrbrock had first consumed alcohol at the age of 12, first tried acid and LSD at the age of 12 and marijuana at age 13, and first used cocaine at age 15. The court discussed Sehrbrock's need for treatment, the seriousness of Sehrbrock's offense, and Sehrbrock's character and rehabilitative needs, noting that he's a "young man" with "a lot of good qualities," who had "people here coming to support him which tells me that someplace in there[,] if you dig through enough drugs and alcohol[,] you'll find a good person."

¶25 The circuit court's remarks at the postconviction hearing made the link between Sehrbrock's use of alcohol and the offense even more explicit. As noted, the court told Sehrbrock, "[Y]ou and alcohol teamed up and [you] got yourself into a lot of trouble." The court stated that Sehrbrock's use of alcohol "is a huge factor in Mr. Sehrbrock's inability to stay out of trouble," and is "directly related to his conduct." The court noted that Sehrbrock "got in[to] a car with a bunch of people" and "agreed to go into a store and rob somebody to get alcohol." The court also linked the ignition interlock condition to Sehrbrock's rehabilitation and the protection of the public by stating that the court was unwilling to expose the public to the risk of having Sehrbrock on the road without an ignition interlock and that this condition would also protect Sehrbrock from himself.

¶26 Significantly, this probation condition was imposed in the context of a case in which both the prosecutor and the circuit court expressed the belief that a prison sentence would have been justified. Rather than imposing a prison sentence, however, the court withheld sentence and granted the parties' request for probation, telling Sehrbrock that he was "getting the benefit of the fact that you're

a young person." The court then imposed conditions, including the ignition interlock condition, designed to rehabilitate Sehrbrock while protecting the public.

¶27 The legislature grants judges "broad discretion" to set probation conditions because "when a judge allows a convicted individual to escape a prison sentence and enjoy the relative freedom of probation, [the judge] must take reasonable judicial measures to protect society and potential victims from future wrongdoing." *Oakley*, 245 Wis. 2d 447, ¶12. Although a circuit court must first consider probation as an option, *State v. Gallion*, 2004 WI 42, ¶25, 270 Wis. 2d 535, 678 N.W.2d 197, "[p]robation is not a matter of right to a defendant, but instead is a privilege," *State v. Heyn*, 155 Wis. 2d 621, 627, 456 N.W.2d 157 (1990).[3] Our supreme court "recognize[s] that convicted felons may have trouble conforming their future conduct to the law," and therefore "uphold[s] the power of a judge to tailor individualized probation conditions per WIS. STAT. § 973.09(1)(a)." *Oakley*, 245 Wis. 2d 447, ¶13.

¶28 Based on our review of the record, we conclude that the ignition interlock condition is "reasonably related" to Sehrbrock's rehabilitation and the protection of the public. This is particularly so given the circuit court's broad discretion in fashioning conditions of probation, the presumption that the court's sentence is reasonable, and our obligation to look for reasons in the record to sustain the court's probation condition. Sehrbrock's specific arguments to the contrary are unpersuasive.

---

[3] We note that granting sentencing courts substantial discretion in fashioning conditions of probation is also consistent with the goal of promoting probation as an alternative to a prison sentence.

¶29    Sehrbrock argues that although he had been drinking alcohol at the time of the offense, he was not driving the vehicle that brought him to the gas station and he has no history of OWI-related offenses.   To the extent that Sehrbrock means to suggest that the ignition interlock condition is unreasonable as a matter of law because it is being imposed for a non-OWI-related offense or to a person without an OWI-related history, he cites no authority to support such a suggestion.[4]

¶30    To the extent that Sehrbrock means to argue that a condition of probation must directly relate to the crime for which a defendant is sentenced, he fails to cite authority for this premise, either from this jurisdiction or any other. Indeed, this court has rejected this argument and upheld conditions of probation not directly related to the offense for which the defendant is convicted if the conditions are otherwise valid.  For example, in *State v. Beiersdorf*, 208 Wis. 2d 492, 503 n.9, 561 N.W.2d 749 (Ct. App. 1997), we concluded that a "condition of probation need not directly relate to [the] crime for which [a] defendant [was] placed on probation where [the] defendant needs to be rehabilitated from related conduct."

¶31    We reached the same conclusion in *State v. E. Miller*, 175 Wis. 2d 204, 208-09, 499 N.W.2d 215 (Ct. App. 1993). There, the defendant was convicted of burglary and theft.  *Id.* at 207.  The defendant, who had been convicted in recent years for harassing telephone calls to women, challenged a

_____

[4] We note that although Sehrbrock refers to the ignition interlock statute, WIS. STAT. § 343.301, in arguing that the seven-year duration of the condition is harsh and excessive (which we discuss later in this opinion), he does not argue that under this statute, an ignition interlock may only be imposed for the OWI-related offenses expressly enumerated in that statute.

condition of his probation in the burglary and theft case that prohibited him from telephoning any woman without the permission of his probation officer. *Id.* at 207-08. We concluded that although the defendant's past criminal conduct of making sexually explicit telephone calls to women was unrelated to the offenses for which he was convicted, the defendant needed to be rehabilitated from that conduct. *Id.* at 209-10. Because the condition was rationally related to the defendant's need for rehabilitation, it was "reasonable and appropriate" as required by the probation statute, WIS. STAT. § 973.09. *E. Miller*, 175 Wis. 2d at 210; *see also Oakley*, 245 Wis. 2d 447, ¶1 (court properly exercised its discretion in imposing a condition of probation that prohibited a father of nine, who had intentionally refused to pay child support, from having another child until he could show that he could support that child and his current children).

¶32 We have reached the same conclusion in the context of extended supervision. *See State v. Koenig*, 2003 WI App 12, ¶7 n.3, 259 Wis. 2d 833, 656 N.W.2d 499 ("For purposes of review … authority relating to the propriety of conditions of probation is applicable to conditions of extended supervision."). For example, in *B. Miller*, 283 Wis. 2d 465, we rejected an argument by a defendant who was convicted of OWI that the circuit court lacked authority to order him to fulfill his child support obligations in an unrelated paternity action from over 10 years ago as a condition of extended supervision in the OWI case. We noted that the circuit court's broad discretion in ordering conditions of extended supervision "is subject only to a standard of reasonableness and appropriateness," which in turn is "determined by how well it serves the dual goals of supervision: rehabilitation of the defendant and the protection of a state or community interest." *Id.*, ¶11; *see also State v. Rowan*, 2012 WI 60, ¶¶7, 10, 18, 25, 341 Wis. 2d 281, 814 N.W.2d 854 (rejecting defendant's challenge to a condition of extended

14

supervision imposed for battery conviction that permitted defendant's person, residence, and vehicle to be subject to search for a firearm at any time without probable cause or reasonable suspicion).

¶33     Sehrbrock concedes that "a condition of probation need not be directly related to the crime for which the defendant was convicted." However, relying on *E. Miller*, 175 Wis. 2d 204, and *Rowan*, 341 Wis. 2d 281, he argues that if the condition is not directly related to the crime of conviction, it must address a specific area of past criminality in which the defendant was recently involved. Our review of these cases does not reveal such a requirement, and we reject Sehrbrock's argument on that basis.

¶34     Sehrbrock also argues that the ignition interlock condition was based solely on the circuit court's "idiosyncrasies" or "eccentricities." Specifically, Sehrbrock notes the court's references to the societal harms of alcohol and drug use and the court's comparison of addiction to the "devil." Sehrbrock asserts that the court had "strong opinions about alcohol and other substances which led to" its imposition of the condition. He further asserts that the court imposed the condition "because, in its view, the fact that Mr. Sehrbrock was intoxicated at the time of the offense meant that he had 'surrendered [his] decision making to the devil' and there is no telling what he will do." These assertions overstate the connection between the court's comments and its imposition of the condition, and ignore the context in which the court's comments were made.

¶35     The circuit court made these comments in the context of a case in which, due to Sehrbrock's offense, his criminal history, his pending hit and run charge, and his substance abuse issues, there was risk involved in placing Sehrbrock on probation as requested. As the State argues, "Consistent with [the

court's] responsibility to protect the community from a felon it was leaving out of prison, it used a tool at its disposal to keep him from driving [while intoxicated] and endangering others." The court also referenced its experience as the "drug court judge" and how difficult it can be for individuals with substance abuse issues to stay sober. For example, the court described watching people "go to inpatient and … hold their breath for a year in drug court and walk out of there with a certificate and get arrested two days later for dealing." It is within this context that the court analogized addiction to being "up against the most powerful devil in the world." We agree with the State that, in context, the court's statements reflect the court's "understandable frustration at the heartbreak of addiction, and its understandable attempt to impress on an 18-year-old defendant how high the stakes are." Sehrbrock has not shown that the condition was based on the court's idiosyncrasies rather than on the dual goals of probation: Sehrbrock's rehabilitation and protection of the public.

¶36 Sehrbrock also argues that the condition was unnecessary because the circuit court had before it at sentencing information that Sehrbrock was no longer consuming alcohol and because the court's other conditions, such as absolute sobriety and substance abuse treatment, "already offer protection of the community and facilitate Mr. Sehrbrock's rehabilitation." In support, he cites *State v. Stewart*, 2006 WI App 67, 291 Wis. 2d 480, 713 N.W.2d 165, in which this court concluded that a probation condition that banished a defendant from a township in order to protect several neighbors he had victimized was unconstitutionally overbroad. In addressing whether the aims of the condition could be accomplished in a way that was not unduly restrictive of the defendant's liberties, we observed that "the no[-]contact condition of his probation and

16

supervision, a more narrowly drawn restriction on [the defendant], already offers protection to his victims and facilitates his rehabilitation." *Id.*, ¶16.

¶37 *Stewart* is not on point as it involves an overbreadth challenge, which analyzes whether the condition "is broader than necessary to accomplish [its] purposes." *See id.* Sehrbrock points to no language in *Stewart* that suggests that a condition of probation is not "reasonably related" to the goals of rehabilitation and protection of the public if other conditions are imposed that address the same purpose. Moreover, in seeking to advance Sehrbrock's rehabilitation and the protection of the public, the circuit court in this case was not required to accept the proposition that Sehrbrock would continue to abstain from alcohol.

¶38 Sehrbrock also argues that the ignition interlock condition could be counterproductive, rather than conducive, to his rehabilitation and to public protection. He states that the high cost of installing, maintaining, and removing the ignition interlock (which he asserts is approximately $7,483) could prevent him from having it installed or maintained and therefore "could prevent [him] from obtaining and maintaining employment, or attending treatment, thus impeding his rehabilitation, contrary to the community interest." However, Sehrbrock fails to cite any facts from the record showing that there is any likelihood that employment or treatment would be prevented as a result of the condition. He likewise fails to cite any authority for the proposition that when a court places a defendant on probation, it may not impose a condition that requires a substantial expenditure.

¶39 In sum, we conclude that Sehrbrock has not met his burden of establishing that the ignition interlock condition was not "reasonably related" to

Sehrbrock's rehabilitation or the protection of the public, or that it otherwise constituted an erroneous exercise of discretion.[5]

## Harsh and Excessive

¶40     Relying on the case law quoted below, Sehrbrock argues that if we conclude that the ignition interlock condition is reasonably related to the dual goals of probation, we should nevertheless vacate the condition because its imposition for seven years is unduly harsh and excessive.   In making this argument, Sehrbrock notes that at the postconviction hearing the prosecutor expressed support for reducing the length of the requirement.

¶41     "When a defendant argues that his or her sentence is excessive or unduly harsh, a court may find an erroneous exercise of sentencing discretion 'only where the sentence is so excessive and unusual and so disproportionate to the offense committed as to shock public sentiment and violate the judgment of reasonable people concerning what is right and proper under the circumstances.'" *State v. Grindemann*, 2002 WI App 106, ¶31, 255 Wis. 2d 632, 648 N.W.2d 507 (quoting *Ocanas v. State*, 70 Wis. 2d 179, 185, 233 N.W.2d 457 (1975)). We review the circuit court's determination that its sentence was not unduly harsh for an erroneous exercise of discretion. *State v. Giebel*, 198 Wis. 2d 207, 220, 541 N.W.2d 815 (Ct. App. 1995).

---

[5] Sehrbrock states that the circuit court's rationale for imposing the condition "could be applied to any defendant who committed a crime while under the influence, or who has a history of alcohol abuse." However, our inquiry on appeal is to determine whether Sehrbrock has met his burden of establishing an erroneous exercise of the court's discretion under the specific facts of *this* case. As explained at length above, he has not.

¶42    As a preliminary matter, we observe that the case law on which Sehrbrock relies addresses sentences generally, not conditions of probation specifically.  Sehrbrock does not argue that his sentence, as a whole, is harsh and excessive, only that one particular condition is.  Sehrbrock cites no case law in which our courts have applied the "harsh and excessive" framework to a single condition of probation, nor does he explain why such a framework applies.  As stated, the standard for reviewing whether a circuit court properly exercised its discretion in imposing a condition of probation is whether the condition reasonably relates to the defendant's rehabilitation and to the protection of the public.  However, because the State does not specifically argue that the harsh and excessive framework may not apply to a condition of probation, we assume without deciding that it does, and we reject Sehrbrock's arguments under that framework.

¶43    In support of this argument, Sehrbrock again relies on the cost of installing, maintaining and removing the ignition interlock, which he argues could prevent him from having the financial means to live independently, obtain and maintain employment, or attend treatment.  Again, Sehrbrock points to no facts of record to indicate any likelihood of such outcomes.  Accordingly, he has not met his burden of establishing that the condition "'is so excessive and unusual and so disproportionate to the offense committed as to shock public sentiment and violate the judgment of reasonable people concerning what is right and proper under the circumstances.'"  *Grindemann*, 255 Wis. 2d 632, ¶31 (quoted source omitted).

¶44    Sehrbrock also argues that the seven-year requirement is "more than twice as long as the maximum [ignition interlock] requirement that could be imposed on a defendant convicted of operating while intoxicated third offense or above."  He argues that because he does not have a history of OWI offenses and

19

was not driving at the time of the offense, "ordering him to have an [ignition interlock] for longer than someone who has put the community at risk by drinking and driving on multiple occasions is harsh and excessive." We cannot conclude under the specific facts of this case—including Sehrbrock's significant criminal history, his substance abuse issues, his pending hit and run charge, the role that alcohol played in this offense and at least one prior offense, and the circuit court's acknowledgement that a prison sentence would have been warranted—that the probation condition "shock[s] public sentiment" because it is longer than the maximum required in a third-or-above OWI offense.

¶45 Finally, we stress the circuit court's stated willingness to remove the condition if Sehrbrock showed that he was successfully addressing his alcohol abuse issues. Although the court reasonably concluded at the postconviction hearing that Sehrbrock had not shown that removal of the condition was appropriate at that time, Sehrbrock is not precluded from making such a showing in the future.

## CONCLUSION

¶46 For the reasons stated, Sehrbrock has failed to establish that the circuit court erroneously exercised its discretion in ordering an ignition interlock as a condition of Sehrbrock's probation. Accordingly, we affirm the judgment of conviction and the order denying Sehrbrock's motion for sentence modification.

*By the Court.*—Judgment and order affirmed.

Not recommended for publication in the official reports.

No. 2022AP2153-CR(D)

¶47  TAYLOR, J. (*dissenting*).  I conclude that under the facts of this case, it was an erroneous exercise of discretion for the circuit court to require the use of an ignition interlock device (IID) as a condition of probation.

¶48  Sehrbrock pled guilty to robbery with use of force as a party to a crime when, at seventeen years old, he and another teenager stole several packs of cigarettes from a gas station convenience store one early morning in November 2020.  In the process of committing this crime, Sehrbrock's co-defendant sprayed the store clerk with pepper spray and Sehrbrock threw several canned beverages at the clerk before they fled on foot.  Sehrbrock reported being highly intoxicated at the time of the offense.  As detailed in the presentence investigation (PSI), Sehrbrock admitted to drinking alcohol heavily when he was sixteen and seventeen years old as well as using controlled substances from a young age.

¶49  At the time of sentencing, Sehrbrock was almost nineteen years old, he had voluntarily completed inpatient alcohol treatment, and he was in counseling with an alcohol and drug addiction therapist which Sehrbrock had initiated several months following this offense.  There is nothing in the record at sentencing or in the postconviction proceedings that Sehrbrock ever drove or operated a vehicle while intoxicated.  His criminal history consisted of three 2020 incidents when Sehrbrock was sixteen years old:  two felony convictions for possession with intent to deliver less than 200 grams of THC as party to a crime and a misdemeanor criminal damage to property conviction which appears to have

involved damaging his own television. Sehrbrock also had a juvenile adjudication for resisting or obstructing an officer when he was fifteen years old.

¶50 At sentencing on this case, both of the parties and the Department of Corrections recommended that the circuit court withhold sentence and place Sehrbrock on a period of probation. The parties recommended a term of probation ranging from five to eight years, with one year of conditional jail time as well as other conditions as set forth in the PSI. The circuit court withheld sentence and placed Sehrbrock on seven years of probation, incorporating the probation conditions that had been recommended by the parties and in the PSI, which included one year of jail, maintaining absolute sobriety and participating and completing all programming recommended by the Department of Corrections, including a cognitive-based program.[1]

¶51 At the conclusion of the sentencing hearing, the circuit court questioned "[h]ow about ignition interlock? Somebody who drinks as much as he drinks ought not be on the road unless he's in a car that has ignition interlock." The court stated that "[a]ll these people that came to court are pulling you this way to keep you from falling over and the devil is pulling the other way. You got to side … with either your friends and family or the devil. Bad enough they gotta

---

[1] Additional probation conditions ordered by the circuit court included: prohibiting Sehrbrock from visiting the premises of any establishment whose primary business activity involves the sale or distribution of alcoholic beverages, including bars, taverns, liquor stores and beer tents; prohibiting Sehrbrock from using or possessing any controlled substances (without a valid prescription) or drug paraphernalia, nor be in the presence of anyone who does; requiring Sehrbrock's treatment provider to report progress or lack thereof including lack of adequate effort or engagement to the probation agent and, if requested by the Court, to the Court; and requiring the treatment provider to submit at least quarterly progress reports to the probation agent and, if requested by the Court, to the Court. The court also warned Sehrbrock that, on probation, he would be periodically and randomly tested for drugs.

pull against the devil. If they have to pull against you, then you and the devil are gonna win. … [T]he devil has his claws into you and it's going to take a lot to pry them loose."

¶52 Sehrbrock brought a postconviction motion to remove the IID probation condition or reduce the seven-year probationary time period for which it was ordered. In rejecting Sehrbrock's motion, the circuit court recognized that Sehrbrock had no history of intoxicated driving, but again focused on the dangers of alcohol: "[o]nce you get to the point where you are intoxicated, you have given the keys to your life to the devil. And everybody who is in contact with you is in danger because there's no telling what you're going to do."

¶53 Circuit courts have broad sentencing discretion, including in imposing all "reasonable and appropriate" conditions of probation and tailoring specific probation conditions to the individual defendant. *See* WIS. STAT. § 973.09(1)(a); *see also* **State v. Oakley**, 2001 WI 103, ¶12, 245 Wis. 2d 447, 629 N.W.2d 200, *opinion clarified on denial of reconsideration*, 2001 WI 123, 248 Wis. 2d 654, 635 N.W.2d 760. Whether a probation condition is "reasonable and appropriate" is determined by how well it serves the dual goals of rehabilitating the defendant and protecting the public. **State v. Miller**, 2005 WI App 114, ¶11, 283 Wis. 2d 465, 701 N.W.2d 47. Ultimately, the determination of whether a probation condition is "reasonable and appropriate" depends on the factual record or the reasonable inferences that can be derived from the factual record. *See* **State v. Handley**, 173 Wis. 2d 838, 842-43, 496 N.W.2d 725 (Ct. App. 1993) ("Discretion contemplates a process of reasoning which must depend on facts that are of record or that are reasonably derived by inference from the record."). As a result, "this court will uphold a circuit court's discretionary decision if the circuit court examined the relevant facts, applied a proper standard of law, and using a

demonstrated rational process, reached a conclusion that a reasonable judge could reach." *State v. Jenkins*, 2007 WI 96, ¶30, 303 Wis. 2d 157, 736 N.W.2d 24.

¶54    However, if the facts in the record and reasonable inferences therefrom do not support a circuit court's decision to impose a condition of probation, this court may conclude that the court erroneously exercised its discretion. *Handley*, 173 Wis. 2d at 843-45. For instance, in *Handley*, the circuit court required the defendant to pay $1,000 in counseling costs for each of the victims as a condition of probation. *Id.* at 841. This court held that this condition of probation was an erroneous exercise of discretion because there was no evidence in the record that the victims needed psychological treatment. *Id.* at 843. This court also held that the determination of $1,000 for each victim was arbitrary and not supported by any facts in the record. *Id.* at 844; *see also State v. Alpers*, No. 2015AP1784, unpublished slip op. ¶¶16-18 (WI App Jan. 12, 2016) (in a decision citable only as persuasive authority, pursuant to WIS. STAT. RULE 809.23(2)(b), this court reversed a court's order that the defendant install an IID on her husband's car, in part, because the order was not factually supported by the record).

¶55    In the present case, I agree with Sehrbrock that the IID condition was not "reasonable and appropriate" because it was not sufficiently supported by the facts of this case or on reasonably derived inferences. The record amply supports the circuit court's findings that Sehrbrock had struggled with significant alcohol and substance addiction from a young age, which contributed to Sehrbrock's criminal conduct. The record is nonexistent, however, when it comes to any history of driving or operating a vehicle while intoxicated. Although Sehrbrock was intoxicated when committing this crime, it is undisputed that Sehrbrock did not drive or operate a vehicle as part of this offense. The record

also contains no allegations or evidence that Sehrbrock had previously operated a vehicle while intoxicated or had any prior citations or convictions or any pending charges for committing a vehicular offense while intoxicated. At the time of sentencing, there was no discussion about nor evidence in the record regarding whether a vehicle was titled or registered in Sehrbrock's name, whether he had access to or control over any vehicle or whether he was entitled to a reduction in the IID cost. The sentencing hearing transcript suggests that the IID was imposed as an afterthought and was rooted in rhetoric that likened Sehrbrock's alcohol addiction to "the devil ha[ving] his claws into [Sehrbrock]," rather than in the particular facts of this case or Sehrbrock's driving history.

¶56    This court independently reviews the record to look for reasons to support the circuit court's exercise of discretion. *See State v. Pharr*, 115 Wis. 2d 334, 343, 340 N.W.2d 498 (1983). The only reference in the record about Sehrbrock's operation of a vehicle is a single statement from the prosecutor at the sentencing hearing that Sehrbrock had a pending charge for a "hit and run" in Milwaukee County, which can be considered at sentencing. *See Elias v. State*, 93 Wis. 2d 278, 284, 286 N.W.2d 559 (1980) (sentencing court can consider "offenses which were uncharged and unproven" and "pending charges for which there has been no conviction"). Even so, there is no factual support in the record that Sehrbrock had ever driven intoxicated or even owned or had regular access to a vehicle. There is no similar factual scenario in any Wisconsin appellate case where an IID has been imposed as a condition of probation for a non-vehicular crime, much less when there is no history of the defendant driving or operating a

vehicle while intoxicated.[2]  Nor does there appear to be any case law in other jurisdictions where an IID has been required as a condition of probation in a factually analogous situation not involving a vehicular crime or intoxicated driving.  The IID probation condition in this case is simply not related to Sehrbrock's rehabilitation or protecting the public because the condition pertains to conduct (intoxicated driving) that is absent from the facts in this case, absent from Sehrbrock's criminal history, and absent from his driving history.

¶57     For these reasons, I conclude that imposing an IID as a condition of probation was an erroneous exercise of discretion.  I would remand this case to the circuit court to amend the judgment of conviction to strike the IID probation condition.

---

[2] Sehrbrock does not raise in this appeal the issue of the circuit court's authority to impose an IID as a probation condition for an offense not enumerated in WIS. STAT. § 343.301(1g)(a), which requires that a circuit court order an IID when a defendant: (1) improperly refused to take an intoxication test under WIS. STAT. § 343.305; (2) violated certain OWI-related statutes—WIS. STAT. §§ 346.63(1) or (2), 940.09(1), or 940.25—with a blood alcohol concentration of 0.15 or more at the time; or (3) violated one of those OWI-related statutes with one or more prior OWI convictions as defined by WIS. STAT. § 343.307(1).  Because this issue is not raised on appeal, I do not address it. *See State v. Pettit*, 171 Wis. 2d 627, 647, 492 N.W.2d 633 (Ct. App. 1992) (we may decline to address undeveloped arguments because we "cannot serve as both advocate and judge").